Holden v. Garrett.

HOWARD M. HOLDEN v. NINA GARRETT, *et al.*

1. LIEN OF JUDGMENT OR EXECUTION LEVY, *Extent of.* The lien of a judgment or an execution levy is only upon the actual interest of the judgment debtor in real estate, and does not, except in cases where the doctrine of estoppel applies, extend to interests which by the record are apparently, but are not in fact, vested in him.
2. LIENS, *Priority of; Notice.* The lien of a mortgage unrecorded at the date of a judgment, but recorded before the sale upon an execution issued thereon, is prior to the lien of the judgment, and the purchaser buys with constructive notice of the mortgage.

*Error from Pottawatomie District Court.*

ACTION brought by *Nina Garrett* against Uriah Stephens and Martha J. Stephens, his wife, John Dial, John M. Wheeler, W. H. Ryus, and *Howard M. Holden,* upon a note, executed by the said Uriah Stephens, November 25, 1869, payable in seven years and nine months after date, with interest at ten per cent. per annum, and to foreclose a mortgage given at the same time to secure the payment of said note, by the said Uriah Stephens and wife, upon certain real estate situated in

the county of Pottawatomie. The other defendants were made parties for the purpose of determining any interest they might have in and to said real estate, and the priority of all claims or liens thereon. Service of summons was duly made upon all of the defendants. Uriah Stephens, Martha J. Stephens and W. H. Ryus filed no answers, but made default in said action. John Dial, John M. Wheeler and *Howard M. Holden*, each filed separate answers in the action, setting up his claim or interest in said real estate. Trial at the August Term, 1878, of the district court, by the court, (a jury being waived,) when the court found for the plaintiff, and against all of the defendants except Dial, whose claim to the land described in his answer therein was conceded by the plaintiff, and judgment was accordingly rendered in favor of the plaintiff, *Nina Garrett*, for the amount due on said note, and declaring said mortgage to be a prior and first lien upon the lands therein described as against the claim or interest of any and all of the other defendants. *Holden* brings the case to this court for review.

The facts, as they appear in the plaintiff's petition, the answer of the defendant *Holden*, and the testimony on their part, are in substance as follows: Prior to the 25th day of November, 1869, the said *Nina Garrett* was the owner in fee, in her own right, of the real estate described in her said petition, situated in the county of Pottawatomie. On said 25th day of November, 1869, plaintiff being a minor, said real estate was sold under the direction of the probate court of Wyandotte county, by virtue of an order of said court, by Eliza J. Stone, the legally-constituted guardian of the plaintiff, and by her conveyed to Uriah Stephens. The note and mortgage sued on in said action were given for a portion of the purchase-money therefor. This mortgage was not recorded until March 5th, 1875, at which time it was duly recorded in the office of the register of deeds for the county of Pottawatomie. On the 4th and 12th days of March, 1874, respectively, two certain personal judgments were rendered by the consideration of the district court of Wyandotte

county against the said Uriah Stephens, and in favor of Jacob Luke and John Olson and Nels Olson, respectively. Afterward, executions were issued by the clerk of said district court of Wyandotte county on said judgments, directed to the sheriff of the county of Pottawatomie; and on the 20th day of July, 1874, these executions were, by the sheriff of said county of Pottawatomie, levied upon a portion of the lands described in the mortgage of said plaintiff. No sale was made or attempted under and by virtue of said executions, but the same were returned to the court from which they were issued, and *alias* and *pluries* executions issued, which were in turn levied upon said lands until the 25th day of November, 1876, when a sale thereunder was made by the sheriff of the county of Pottawatomie, to one W. H. Ryus. On the 30th of March, 1876, the two above-named judgments were assigned to *Holden*, and the assignments thereof were duly filed in the office of the clerk of the district court of Wyandotte county. Whatever interest *Holden* had in said real estate was derived from the said sheriff's sale to W. H. Ryus.

*McClure & Humphrey*, for plaintiff in error:

We claim that the court erred in its finding and judgment, "that the mortgage lien of Nina Garrett was prior and superior to the lien acquired by the levy of an execution," made before said mortgage was filed for record, and in the absence of any actual notice of the execution of said mortgage. Sec. 444, p. 714, Gen. Stat., provides that "All real estate not bound by the lien of the judgment, as well as goods and chattels of the debtor, shall be bound from the time they shall be seized in execution." If on the 20th of July, 1874, the day upon which the lands in contest were seized in execution, the records of Pottawatomie county failed to show any mortgage lien claimed by the defendant Nina Garrett, and the judgment creditor and the plaintiff in error had no actual notice of such mortgage lien, we contend that by virtue of the above section of the statute, the lands so seized were bound from the date they were levied upon, and that no subsequent notice, or

deposit of said mortgage in the office of the register of deeds, would defeat the prior lien thus acquired.

Ch. 22, Gen. Stat., provides what instruments in writing relating to real estate shall be recorded. Sec. 21 of said chapter, p. 187, reads as follows: "No such instrument in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record." The mortgage of Nina Garrett did not become a lien upon the lands, and had no legal validity, until the 5th of March, 1875, the day it was deposited for record, and prior to that date the lands had been seized in execution and a valid lien thereby acquired in favor of the judgment creditor. It is true that the mortgage was given to secure the payment of the purchase-money, but the supreme court of this state has decided that the doctrine of a vendor's lien does not exist in this state. (3 Kas. 172; 4 id. 76; 13 id. 245.)

In the case of *Plumb v. Bay,* (18 Kas. 415,) the court has decided that an unrecorded mortgage for the purchase-money has precedence over a prior judgment, but the court has not passed upon the question raised in this case. See also 3 Ohio St. 471; 16 Ohio, 59; 16 id. 533; 14 id. 429; 1 Ohio St. 110; 13 Ohio, 148; 4 Ohio St. 45; 45 Tex. 522; 1 Metc. 212; 103 Mass. 491; 11 Metc. 244.

The statute of Illinois, 1845, p. 108, § 23, provides that "all deeds, mortgages or other instruments of writing, which are required to be recorded, shall take effect and be in force after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers without notice, and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers without notice, until the same shall be filed for record." It has been decided under this statute, that a deed not filed for record is, as to creditors and subsequent purchasers, wholly without effect, and that it is as to them in all respects as if it did not exist. (*Martin v. Dryden,* 1 Gilman, 187; *Cook v. Hall,* 1 Gilman, 575; *Choteau v. Jones,* 11 Ill. 300; *Kennedy v. Northrup,*

15 Ill. 148; *Curtis v. Root*, 28 Ill. 367; *Brookfield v. Goodrich*, 32 Ill. 363.) See also, *McNitt v. Turner*, 16 Wall. 352.

In the case of *Brown v. Tuthill*, 1 G. Greene (Iowa), 189, when the registry law of that state was the same as ours, the court held: "A lien by attachment, or by a judgment, will hold against a prior unrecorded deed." Subsequently a different registration law was passed, and since then the decisions of the supreme court have been in conformity with the existing law. (9 Iowa, 528.)

The supreme court of Missouri, under a registry law the same as ours, has decided that "a *bona fide* purchaser of property, who has failed to record his deed until after a judgment has been recovered against his vendor, but who records it prior to any sale under the judgment, can hold it against the person purchasing under the judgment." (14 Mo. 170; 39 Mo. 282; 20 Mo. 133; 43 Mo. 93; 44 Mo. 204.) These cases overrule the former decisions of that court. (8 Mo. 479; 9 Mo. 722; 11 Mo. 77.)

With due respect for the supreme court of Missouri, we think its later decisions have been made in total disregard of the registry law of that state, and cannot be sustained either on principle or authority. It may be stated that the right of a vendor's lien for the purchase-money is recognized in that state, also that the statute fails to contain any provision similar to § 4, ch. 68, p. 582, Gen. Stat. of Kansas.

We might cite decisions under the statutes of other states containing registration laws similar to those of the states above mentioned, but we deem it unnecessary, and will only call attention to the following cases, which will be found to support the principle for which we contend: 20 Mich. 162; 6 Heisk. (Tenn.) 55; 31 Tex. 344; 3 Hawks (N. C.), 55; 2 id. 520; 37 Ala. 354; 4 Johns. (N. Y.) 216; 1 Grant (Pa.) Cas. 266; 23 Pa. St. 110; 25 Ga. 687; 4 Pa. St. 123; 45 Pa. St. 172.

*H. L. Alden*, and *O. H. Dean*, for defendant in error Nina Garrett:

If the judgment creditor had availed himself of the provisions of § 463 of the code, (Gen. Stat., p. 718,) which pro-

vides that "if lands or tenements levied on as aforesaid are not sold upon one execution, other executions may be issued to sell the property so levied upon," and upon the return of the first execution had caused another to be issued for the purpose of selling the property so levied upon, he would probably have continued the lien acquired by the levy of the first execution. But we do not understand this statute to authorize the issuing of an *alias* or *pluries* execution, and upon such execution being levied upon the same property on which a levy was made under the original execution, to continue the lien acquired by the original levy. The writ authorized by this statute is the same as the writ of *venditioni exponas*, and a sale made under such writ relates back to the levy of the original execution. An *alias* execution, however, becomes a lien upon and binds the property of the judgment debtor only from the time of the levy thereunder, in the same manner as an original. It has no lien anterior to such levy, nor can it perpetuate or renew the lien of a prior writ. (Freeman on Executions, § 202.)

The purchaser at such sheriff's sale gets nothing more and nothing less than the interest of the judgment debtor (Uriah Stephens) in said land. Neither the levy, the sale, the sheriff's deed, nor all together, can give him anything more than the interest of the judgment debtor in the land levied upon. (11 Kas. 477.)

On the 20th day of July, 1874, when this land was levied upon as the property of the judgment debtor, Uriah Stephens, under the first execution issued on said judgments, Stephens owned said land, except any interest he had previously conveyed; and whatever interest he then had in said land could be subjected to the payment of said judgments, and no more. He had however prior to that time conveyed said land, or at least a sufficient interest therein to secure the amount of her claim, to the said Nina Garrett. A mortgage is in form a conveyance of the property intended to be pledged as a security, and is governed by the same rules with respect to its execution, the recording thereof, notice to third persons, its

use as evidence, and its relative strength and force, when compared with other conveyances, incumbrances or equities, as other conveyances are. (*Kirkwood v. Koester,* supra.) The failure to record the mortgage did not invalidate it. (Gen. Stat. 1868, p. 187, § 21; 8 Kas. 112.) Neither the judgment creditors, nor the purchaser at said sheriff's sale, could get any greater interest in the land by virtue of the levy of said executions than the judgment debtor had at the time of said levy. Their lien was upon the lands and tenements of the judgment debtor, and not upon lands and tenements not in fact belonging to him. (Gen. Stat. 1868, p. 714, § 444; 2 Kas. 236; 14 Mo. 170; 9 Iowa, 529; Freeman on Judgments, §§ 356, 357; Freeman on Executions, § 335; Drake on Attachments, § 223; 4 Cow. 599; 1 Ohio, 257; 5 Ohio St. 211.)

The levy of an execution neither transfers title nor changes the right of property. It simply confers the right to have the property levied upon subjected to the payment of the judgment, *to the exclusion of all transfers and liens made by* the judgment debtor *subsequent to the commencement of the execution lien,* and affects only such transfers and liens as are made subsequent to such levy. (Freeman on Executions, § 195; 10 Mich. 349.)

The registry law is for the protection of purchasers in good faith, for a valuable consideration, against prior secret conveyances. Judgment or execution creditors are not purchasers within its meaning, and cannot claim the benefit of its provisions until the property levied upon has been sold in pursuance of law. There is nothing in the statute which gives preference to a judgment or execution lien over an unrecorded mortgage. The judgment being by act of law, does not destroy the lien acquired by an unrecorded mortgage, nor gain any preference over it. The creditor when he makes sale on his execution, and becomes the purchaser, may acquire new equities, but until that time he stands on the rights of his debtor, and the levy may be defeated by equities which the debtor is unable to resist. (10 Mich. 349; *French v. Stone,* Supreme Court of Mich., Cent. L. J., vol. 6, p. 405;

14 Mo. 170; 2 Kas. 236; 4 Johns. 216; 9 Cow. 123; 8 Wend. 620; 1 Paige Ch. 125, 280; 4 id. 9; 20 Mo. 133; 39 Mo. 282; 43 Mo. 93; 44 Mo. 204; 49 Mo. 244; 60 Mo. 181; 19 Kas. 287; *Tucker v. Vandermark, et al.*, 21 Kas. 263; 26 Iowa, 288; 15 Iowa, 495; 16 Iowa, 227, 574; 18 Iowa, 151; 11 Iowa, 174; 2 Johns. Ch. 585.)

Had said land been sold before said mortgage was recorded, and without notice to the purchaser of the existence of the mortgage, there would be but little doubt but that the purchaser would have taken the land free from any lien or prejudice by reason of the mortgage. But the sale did not take place until November 25, 1876, more than a year and a half after the mortgage had been properly recorded.

The Ohio decisions referred to by counsel for plaintiff in error were all made under an entirely different statute from ours. This statute provides "that all mortgages shall take effect from the time the same are recorded." The recording or delivery for record is a part of the execution of the instrument, and hence before that act is done, the instrument is not a mortgage—in fact, is of no validity whatever, not even conferring an equity. Said court further decides that when it once becomes a mortgage by such delivery, if it be prior in time, it will take precedence under the statute, and that each lien should prevail according to its age. (16 Ohio, 533; 14 Ohio, 428.) In the case of *Fosdick v. Barr*, 3 Ohio St. 471, a sale of the land had been made under the levy, before the recording of the mortgage or assignment. In fact, the mortgage or assignment never was recorded. In the case of *White v. Denman*, 16 Ohio, 59, the mortgage was so defective as to be invalid.

The statutes of Massachusetts, Illinois, and Texas, referred to by counsel for plaintiff in error, all expressly provide that such deed or conveyance shall be void as to *creditors*. Our statute contains no such provision.

The case of *Brown v. Tuthill*, 1 G. Greene, 189, is practically overruled by *Norton v. Williams*, 9 Iowa, 529. In the latter case the court says: "We incline to the opinion that, under

the statute of 1843, the case of *Brown v. Tuthill* is against the current of the decisions." Our statute upon this question (Gen. Stat., ch. 22, § 21) is identical with the statute of Missouri upon the same subject, and was evidently adopted from the Missouri statute. The decisions of that state are, therefore, entitled to greater weight than the decisions of other states having different statutes. Indeed, we think that the rule laid down in *Bemis v. Becker*, 1 Kas. 226, that "Whatever construction had been given to that statute by the courts of Missouri must be presumed to have been known and approved by the legislature of Kansas," when it passed such law, will apply in this case. (*Bemis v. Becker*, 1 Kas. 226. See Missouri cases above cited.)

This mortgage was given to secure the purchase-money for this land, and was executed at the same time the deed was executed therefor. The execution of the deed and of the mortgage being simultaneous acts, the title to the land never vested in the purchaser, but merely passed through his hands and vested at once in the mortgagee. The execution lien could not, therefore, attach to the land as the property of Uriah Stephens. Stephens, at most, held the mere legal title to the land upon which an execution could not be levied as against the equitable owner. (20 Ill. 53; 23 Pa. St. 186; Freeman on Judgments, 323; *Tucker v. Vandermark*, supra.) Under our statute a mortgage given by a purchaser to secure the payment of purchase-money has preference, even over a prior judgment against such purchaser. (Gen. Stat. 1868, p. 582, § 4; 18 Kas. 415.) The notice of the fact of the existence of said mortgage, as disclosed by the record, is conclusive upon the plaintiff in error, said record being a necessary link in his title. Wade on Notice, §§ 310, 313, 327; 25 Mich. 51; 3 How. (U. S.) 333; 2 Binney, 455; 1 Yerg. (Tenn.) 360; Cent. L. J., vol. 4, p. 459, and cases there cited.

The opinion of the court was delivered by

BREWER, J.: The contest in this case is between one who claims under the lien of an execution levy, and the holder of

a prior but unrecorded mortgage. The judgment was in a county other than that in which the land was situate, and was rendered long after the execution of the mortgage. The levy was made before, but the sale not till after, the record of the mortgage. There was no actual notice of the existence of this mortgage. On the one side it is claimed that by virtue of §21, ch. 22, Gen. Stat., p. 187, which reads as follows: "No such instrument in writing shall be valid except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record," the mortgage is to be considered as though it had no existence, and the land as free from any incumbrance at the date of the levy, and that the lien then secured by the levy ripened into a title by the sale, and was paramount to the lien created by the subsequent record of the mortgage; and on the other hand it is claimed that the lien of the levy was only upon the actual interest of the judgment debtor in the real estate, and that as such interest was in fact limited by the mortgage, only such limited interest was seized and bound by the levy.

Of course, this is but part and parcel of a still broader question, and that is, does the lien of an execution levy extend to only the actual, or does it also reach the apparent, title of the judgment debtor? Is the inquiry restricted to the face of the record, or may it pass to the actual facts? Authorities are not wanting to support either view, and cogent reasons may be adduced in favor of each. On the one hand it may be said with force that if the mortgage lien is adjudged paramount, then the section quoted is practically nullified, and an instrument which the statute declares invalid is pronounced valid; and on the other, that if the levy is adjudged paramount, then the statute which authorizes a levy upon the lands, tenements and hereditaments of the debtor is extended so as to sustain a levy upon lands which are not in fact wholly his.

With much hesitation, and after a long and careful examination of the question in its various relations, we have reached the conclusion that the lien of the mortgage must be adjudged

prior and paramount.    These are the reasons which have controlled us: It gives exact force to the statute declaring to what a judgment lien and an execution levy extend.  Judgments "shall be liens on the real estate of the debtor within the county." (Dassler's Comp. Laws 1879, p. 656, § 419.)    This evidently contemplates actual and not apparent ownership. The judgment is a lien upon that which is his, and not that which simply appears to be his.   How often the legal title is placed in one party when the equitable title, the real ownership, is in others.   Many reasons induce this — convenience in managing, facility in passing title, number of parties interested, and others needless to mention.   And yet the record discloses only the naked legal title.   Now if the judgment is a lien upon all that appears, it will cut off all the undisclosed equitable rights and interests.   To extend the lien to that which is not, but which appears of record to be the defendant's, is to do violence to the language.  " Real estate of the debtor" plainly means that which is in fact of or belonging to the debtor.   And he who claims under a judgment lien can take no more than the statute gives.   The question is not what rights some one else may have, but what rights does he acquire?    The answer to this question must first and chiefly be sought in the statute which gives and defines the extent of that lien.   The section defining the extent of the execution levy may not be quite so clear in its indications, and yet, taken in connection with that cited concerning the judgment lien, it is perfectly plain.   "All real estate, not bound by the lien of the judgment, as well as goods and chattels of the debtor, shall be bound from the time they shall be seized in execution." (Dassler's Comp. Laws 1879, p. 660, § 444.)    It might be argued that the words "of the debtor" only qualify the immediately preceding words, "goods and chattels," and not the prior clause, "all real estate," etc.; but, comparing the two sections together, it is plain that no larger or other interest is taken by the levy of an execution upon real estate outside the county, than is covered by the lien of the judgment upon real estate within the county.

Again, this construction of the extent to which the lien goes was settled early in the history of this court, and has never been departed from. In *Swarts v. Stees*, 2 Kas. 241, CROZIER, C. J., speaking for the court, says: "Their lien," (*i. e.*, the lien of judgment creditors,) "is upon the lands and tenements of the debtor, and not upon lands and tenements not in fact belonging to him." True, the decision in that case was under a different recording act, and much of the argument in the opinion is entirely inapplicable to the present question; but still, the extent of a judgment lien is plainly recognized and stated. See also *Harrison v. Andrews*, 18 Kas. 542. It may also here be remarked, that we have had occasion to notice the fact that priority of lien or title, even in the absence of actual notice, does not always hinge upon the mere priority of record. Other matters may enter into and affect the question, and equities not shown of record may control. (*School District v. Taylor*, 19 Kas. 287; *Tucker v. Vandermark*, 21 Kas. 263.) Again, it may be laid down as familiar law, that a judgment creditor is not a *bona fide* purchaser. He parts with nothing to acquire his lien. He is in a very different position from one who has bought and paid, or has loaned on the face of a recorded title. The equities are entirely unlike. One has, and the other has not, parted with value upon the face of the record. If the real prevails over the apparent title, the one is no worse off than before he acquired his lien — has lost nothing; while the other loses the value paid or loaned. Hence equity will help the latter, while it cares nothing about the former. Further, in nearly every state in which an unrecorded mortgage has been postponed to a judgment lien, the statute has expressly declared that such a mortgage shall be void as against creditors; and the courts have laid stress upon this fact in their opinions. Thus, the statute of Illinois, 1845, p. 108, § 23, provides: "All deeds, mortgages or other instruments of writing which are required to be recorded, shall take effect and be in force after the time of filing the same for record, and not before,

as to all creditors and subsequent purchasers without notice;
and all such deeds and title papers shall be adjudged void
as to all such creditors and subsequent purchasers without
notice, until the same shall be filed for record." It has been
decided under this statute that a deed not filed for record is,
as to creditors and subsequent purchasers, wholly without
effect. (*Martin v. Dryden*, 1 Gilman, 187; *Cook v. Hall*, 1 Gilman, 575; *Choteau v. Jones*, 11 Ill. 300; *Kennedy v. Northrup*,
15 Ill. 148; *Curtis v. Root*, 28 Ill. 367; *Brookfield v. Goodrich*,
32 Ill. 363. See also *McNitt v. Turner*, 16 Wall. 352.)

To a similar effect is the language of the statutes of Massachusetts, Texas, Alabama, and perhaps other states. The
state of Ohio is an exception. The language of her statute
is (Swan's Rev. Stat., pp. 310, 311), "That all mortgages
executed agreeably to the provisions of this act shall be recorded in the office of the recorder of the county in which
such mortgaged premises are situated, *and shall take effect
from the time the same are recorded.*" The force of this language is somewhat similar to that of our statute, and under
it the supreme court of Ohio has held the unrecorded mortgage the inferior lien. (*White v. Denman*, 16 Ohio, 60; *Holliday v. Franklin Bank*, 16 Ohio, 534; *White v. Denman*, 1
Ohio St. 110; *Bloom v. Noggle*, 4 Ohio St. 45.) It must be
conceded that these cases are authority against the view
we have taken. Yet it may be remarked that the statute
attempts to make the record a part of the delivery and execution of the mortgage. It is like the rule requiring the mortgage to be in writing. It must be recorded before it is a
mortgage. But by our statute the unrecorded mortgage is
valid, valid *inter partes* under all circumstances, and valid as
to every one having actual notice. The record is not essential to its existence. But in Missouri we find the very language of our statute. Not merely is the section we have
quoted identical with that of Missouri—the sections immediately preceding are alike. As they had been in force in Missouri for many years before they were enacted in this state,

there is weight in the claim of counsel, that under the authority of *Bemis v. Becker,* 1 Kas. 226, the legislature intended that the same construction should be given to them here as had then been given to them in Missouri. The question has been frequently before the supreme court of Missouri, and the ruling uniform. The earliest case is that of *Davis v. Ownsby,* 14 Mo. 170, decided in 1851, and we quote at length from the opinion. After going on to show that there would be no question were it not for the recording act, the court says:

"The words of the forty-first section, in declaring that the deposit of the deed for record shall impart notice to all persons of the contents thereof, are explained, in my opinion, by the subsequent words of the same section, which provide that all subsequent purchasers and mortgagees shall be deemed in law and equity to purchase with notice. The obvious meaning of the whole section is, that filing a deed for record imparts notice to all persons who shall subsequently become interested in the title, either as purchasers or mortgagees.

"The forty-second section, in declaring that no such instrument in writing shall be valid, except between the parties thereto and such as shall have actual notice thereof, until deposited for record, is not designed to allow any person to dispute the validity of an unrecorded deed, unless he is interested in the title under the same grantor. A mere trespasser cannot dispute it. There must be a title for value, under the grantor, to admit of the question being raised.

"Now it will be seen that a creditor, as such, is nowhere alluded to in the statute as a person who is affected by notice, or to whom notice is to be given, and it would plainly be useless to give actual notice of an unrecorded deed to a creditor with a view to affect the person who might afterward become a purchaser under the judgment of the creditors.

"A creditor, by obtaining a judgment, acquires a lien that binds the estate of the defendant against any subsequent act of his, but he acquires no interest or estate in the property. A purchaser of the property under the judgment of the creditor is the first person who acquires an interest in the property, and is the person who is to be affected by notice, either actual or constructive. If he has notice before he assumes the character of a purchaser, he invests his money in a

speculation against the deed, and the judgment creditor takes the money upon his judgment. The recording of the deed before the purchase is notice to him.

"I exclude creditors altogether from the above statute, believing that they were never intended to be embraced within its provisions."

See also *Valentine v. Havener*, 20 Mo. 133; *Stillwell v. McDonald*, 39 Mo. 282; *Potter v. McDowell*, 43 Mo. 93; *Reed v. Ownsby*, 44 Mo. 204; *Sappington v. Oeschli*, 49 Mo. 244; *Black v. Long*, 60 Mo. 181; in all of which the ruling in *Davis v. Ownsby* was affirmed.

The only other state in which we have found or been referred to a statute exactly like ours is Iowa, in which at one time was in force a section like the one first quoted in this opinion. Under that in *Brown v. Tuthill*, 1 G. Greene, 189, it was held that a "lien by attachment will hold against a prior unrecorded deed." The section of the statute was soon after modified, and in a case arising under the new law, (*Norton v. Williams*, 9 Iowa 159,) the court says: "We incline to the opinion that, under the statute of 1843, the case of *Brown v. Tuthill* is against the current of the decisions."

The weight of authority, therefore, upon the exact statute before us, is decidedly with the conclusion we have reached. Without extending this opinion, we close by saying that our conclusion gives full and exact force to the statute which creates and defines a judgment lien; that it is in accord with the prior adjudications of this court; that it sustains and enforces the real equities of all parties; and that it is upheld by the decided weight of authority elsewhere upon the exact question.

The judgment will be affirmed.

All the Justices concurring.