DOSTER *v.* SCULLY.

*(Circuit Court, D. Kansas. June 8, 1886.)*

1. ATTORNEY AND COUNSEL—ADVICE—ESTOPPEL.
   While a lawyer does not insure the correctness of his advice, yet, after having given it, he is estopped from speculating upon it to the injury of his client.

2. SAME—INCORRECT ADVICE, IN GOOD FAITH—EFFECT OF ATTORNEY'S SUBSEQUENT PROFIT BY IT—ESSENTIAL CONDITIONS.
   When a lawyer ignorantly and mistakenly, yet honestly, gives advice, and thereafter enters upon a speculation in respect to the property, the subject-matter of the advice, the law holds him as an agent for his client, and holds the speculation as only for the benefit of the client. But if, when giving the advice, the lawyer at that time understood, not that he was regularly employed to do so, and if the advice was an answer abstractly correct to a question put generally, and not with all the facts and circumstances of the case stated, the above principle does not apply.

In Equity.

*J. J. Buck* and *W. H. Rossington,* for complainant.

*L. F. Vuller,* for defendant.

BREWER, J. The facts in this case are these: A man named Christie was the holder of a large body of land in Marion county, including therein the tract upon which the mortgage in controversy is sought to be foreclosed. On November 29, 1879, he executed a note for $1,973 to a man named Gregg. Both of these parties lived in Canada. On February 20, 1880, Christie acknowledged and delivered a mortgage on this tract to secure such note. That mortgage was recorded March 8, 1880. It was signed and acknowledged by him on February 20th, though not signed or acknowledged by his wife until February 24th, but in fact it was delivered to the mortgagee on February 20th, or, rather, delivered to his agent, and this agent afterwards went and got the wife's signature. It was delivered in lieu of a mortgage which had been executed in November prior, and returned. So that this Mr. Gregg had a mortgage in his possession, acknowledged by the mortgagor on the twentieth day of February, 1880. On the twenty-third of February, three days after he received the mortgage, an attachment was placed upon this land by a man named Leonard. The mortgage was therefore executed and delivered by the mortgagor himself three days before the attachment, but not recorded until about eight days thereafter. That attachment suit

was prosecuted to judgment, the property sold, and purchased by the defendant. Thereafter Mr. Doster became, by purchase of Mr. Gregg, the owner of that mortgage, and brings this suit to foreclose.

The first question—which is now hardly a question—is whether his mortgage is prior to that attachment. The case of *Holden* v. *Garrett,* 23 Kan. 98, disposes of that question; and it holds that the mortgage, having been executed and delivered before the levy of the attachment, is the prior lien.

After that attachment had been pushed to judgment, and just prior to the sale, this state of facts arose, and creates the embarrassing question in the case: Mr. Christie was the owner of a large body of land covered by several liens,—different tracts, covered by different liens. Mr. Doster, the plaintiff in this case, was counsel for some of the lienholders, though not counsel for Mr. Christie, nor for Mr. Leonard. In foreclosing these liens, of course he was anxious to find somebody to purchase. Mr. Scully, who is a large landed property owner in Marion county, also owning lands in Illinois, was induced to investigate the subject. One of his agents, Mr. John Scully, came out in May or the forepart of June, and looked the land over. He went back, and reported to his partner in Illinois, and on the twenty-second day of June Mr. Koehnle, accompanied by a Mr. Schwerdtfeger, arrived in Marion Centre, coming to look up these Christie lands, with a view to their purchase. Mr. Koehnle had been in the real-estate business for some years, and was a general agent for Mr. Scully, looking after his property in Illinois and elsewhere. The sale of the bulk of these lands, though not of the tract covered by the attachment, was to take place on the twenty-fourth of June. Mr. Koehnle and Mr. Schwerdtfeger reached Marion Centre on the 22d, in the evening. The 23d they went through the records of the county, examining the title. On the 24th they visited Mr. Doster's office. And Mr. Koehnle testifies that he intending to leave town, and not be present on the fifth of July, when the property in the attachment suit was to be sold, employed Mr. Doster in the matter, first asking him whether the Gregg mortgage was a lien prior to the attachment; that Mr. Doster told him it was not; and that he, relying upon that, left with Mr. Doster instructions to buy the land at the attachment sale, and it was bought.

Now, the defendant relies upon this proposition: That an attorney is bound by the advice which he gives his client, and that, having given advice of a certain character, he cannot thereafter deal with the property, the subject-matter of the advice, to his own personal gain, and the prejudice of the client who has acted upon his advice. His claim is: "Mr. Doster said to me that that mortgage was an inferior lien to the attachment. I relied upon that advice, bought the land, and now Mr. Doster cannot turn round, buy that mortgage for a song, and foreclose it against my land." Well, the proposition of law is beyond any question. There is such an obligation resting upon

a lawyer to his client that, while he does not insure the correctness of his advice, yet, after having given it, he is estopped from speculating upon it to the injury of his client. Of course, the question arises in two forms. It may be a case where the counsel knowingly and intentionally gives false advice with a view of personal speculation thereafter. In such a case as that, the law is emphatic that he takes nothing by his subsequent speculation; that he forfeits the money he has paid; and that all inures to the benefit of the client. The other case is where a lawyer, ignorantly and mistakenly, yet honestly, gives advice, and thereafter enters upon a speculation in respect to the property the subject-matter of the advice; and there the law treats him as an agent of his client, and hold his speculation as only for the benefit of the client. There would not be any dispute, I presume, among members of the bar generally, as to the correctness of these propositions of law, and the necessity of strict adherence to them in all cases. It is the foundation of the confidence which ought to exist between counsel and client, and which can alone enable counsel to act freely and fully for the benefit of the client.

Now, that Mr. Doster did not intentionally misrepresent the law to his client; that he did not misrepresent the matter knowingly, and for the purposes of subsequent speculation,—is perfectly apparent. A multitude of circumstances show that. In the first place, he had no interest in the Gregg mortgage, or in Mr. Christie, the mortgagor. He not only had no knowledge of the mortgagee,—no certainty, or even probability, that he would thereafter acquire an interest in that mortgage, or have anything to do with the mortgagee,—but, on the other hand, he was interested pecuniarily in securing such a client as Mr. Scully, who had large interests in Marion county, and was the prospective buyer of further interests, which, in the very nature of things, would make him desirable as a client. Under those circumstances, it is not to be supposed that any man of ordinary sense would deliberately misrepresent the law to one whom he was seeking as a client, in the possible and purely speculative hope that he might, some time in the future, acquire an interest from a stranger in an outstanding mortgage. Further, if he was intending wrong, how easy it would have been for him to purchase this mortgage from Mr. Gregg through somebody else, have the transactions conducted in the name of a third party, and himself never figure, and so never be known as having any interest in the mortgage; whereas, he directly purchased the mortgage from Mr. Gregg for his wife, and, when this question arose, took it from his wife to himself. So that his conduct, giving him credit for half common sense, is irresistible demonstration to me that there was no thought on his part of any wrong towards his client.

Was there in fact any information given by counsel to client in respect to the matter of law? This is a difficult question. Mr. Koehnle swears that he consulted Mr. Doster on the morning of the twenty-

fourth of June, and asked him whether the Gregg mortgage was prior to the attachment lien, and was told that it was not; and that, relying upon that, he left instructions with Mr. Doster to buy this property on the fifth of July. Mr. Schwerdtfeger testifies that he was in the office with Mr. Koehnle on the morning of the 24th, and that he heard a conversation of similar import. Mr. Koehnle swears that on the morning of the 26th he again visited Mr. Doster, and again had a similar conversation. Mr. Doster swears there was nothing of the kind; that he never gave him any advice of that character,—never gave him any advice at all in respect to the Gregg mortgage, or as to whether it was a lien prior to the attachment.

Well, there are two witnesses against one. The testimony of the witnesses, so far as you can gather it from the reading of these voluminous depositions, is of a kind which commends itself to one's judgment. It does not appear, upon the face of it, as the testimony of men that are intending to deceive the court by statements other than such as are true in their recollections. This makes it embarrassing, and I have striven to see if I could find from the testimony any solution of the manifest conflict between these apparently credible witnesses, and determine what the real truth was.

It appears that Mr. John Scully, the partner of Mr. Koehnle, had visited Marion county in the latter part of May, or early part of June, prior to this. He went there for the purpose of examining the title to these lands. He went to the register of deed's office, and looked up the title, and carried home some *memoranda*. He visited Mr. Doster, not as a client, but was about the office as a stranger naturally might be. Mr. Koehnle came the twenty-second of June. He was a real-estate agent. He was familiar with the examination of titles. Mr. Schwerdtfeger was a young lawyer who came with him from Illinois. They spent the twenty-third of June in the register of deed's office, and in the office of the clerk of the district court, examining these titles, making their own abstracts, or *memoranda*,—forming their own judgment as to the titles; claiming (Mr. Koehnle did) that as to the general run of titles he was competent to determine, but as to matters of local law declaring that he was not familiar, and depending upon counsel here for those matters. "On the morning of the 24th," (and I quote his exact language,) as he says, "I called on Mr. Doster, —on the morning of the sale,—with Mr. Schwerdfeger, to agree upon the amounts that I was to bid for the land. I told him that the sale of this land would be on the fifth of July, and that I would have to get him to attend to it, and bid in the land for Mr. William Scully, if he was satisfied that the Gregg mortgage, which was filed after the attachment had been levied, would cut no figure in the case, and that Mr. Scully would be safe in buying the land; to which Mr. Doster replied that the attachment levy had priority over the mortgage." Mr. Schwerdtfeger is not very distinct, but he recollects some remarks of that kind. And it appears, further, from Mr. Keohnle's testimony,

as follows: "Did you give the complainant a statement of the facts as to the date, time of filing, and all other necessary information upon which he could base an opinion as to the priority between the Gregg and Leonard lien? *Answer.* I did not, but, from the conversation we had, it seemed that Mr. Doster knew all about the case, having had the conversation with Mr. Scully a few weeks before." Mr. Scully (the gentleman referred to) is dead. His testimony is not to be had.

So that it appears, by Mr. Koehnle's own statement, that he gave Mr. Doster no *data.* He had no abstract. He showed him nothing as to the facts of the case; but, as he thought, Mr. Doster seemed to know all the facts. Mr. Doster testifies that he knew nothing about the case; never examined the records; that he had no conversation with Mr. Scully in reference to that attachment; and that he did not have this kind of a conversation with Mr. Koehnle. He says, in his testimony, which is carefully given, that it is very possible some one, perhaps Mr. Koehnle, may have asked him the question: which had the priority, an attachment levied, to-day, or a mortgage filed to-morrow? and he may have answered such a question; and this, taking Mr. Koehnle's own statement of what took place, seems to me to be the correct explanation of the transaction; that Mr. Koehnle going there, knowing that Mr. Doster had several claims upon the Christie land, and was interested in their sale, took it for granted that Mr. Doster knew all about this particular tract, and may have asked him some such general question. Up to that morning it is not claimed that there had been any relation of attorney and client. That was the initial of such relationship.

It is that explanation which gives a fair and reasonable interpretation to the testimony of both Mr. Doster and Mr. Koehnle. It is not pretended but that Mr. Koehnle himself did examine the register of deed's office. He went there for that purpose. He relied upon his own judgment upon the general run of the title. The law in Illinois, under the same circumstances, would have given the attachment priority to the mortgage. Mr. Schwerdtfeger, (a young man who was with him,) an Illinois attorney, advised him, as he says, that the attachment was prior to the mortgage; at least, that that was the Illinois law.

At the same time that Mr. Koehnle made the arrangement with Mr. Doster for buying in the land, Mr. Doster, as he says, told him that, having varied interests to look after in respect to these Christie lands, he wanted all instructions from his various clients put in writing. He asked him to write just what he wanted him to do; and Mr. Koehnle sat down in his office, and, upon one of his letter-head tablets, wrote the instructions in reference to the same. In those instructions that which was sought from Mr. Doster was the regularity of judicial proceedings. Further than that, the case of *Holden* v. *Garrett* had been decided at the July term of the supreme court,

prior to this time. That fact was known to Mr. Doster. If a full statement of the facts was presented to him, it is not to be presumed that a lawyer of his intelligence and familiarity with decisions of the supreme court would have given advice to the contrary. Further, he had himself, in the Marion county district court, a year or two previous to this time, contested successfully for the same determination. It was a matter, therefore, with which he was familiar; and, unless you impute to him intentional wrong in the matter, it can hardly be supposed possible that, with all the facts presented to him in reference to that title, he could have given the advice which Mr. Koehnle says he did give. Still further, the mortgage was acknowledged by the husband on the twentieth of February, three days before the attachment; by the wife, on the 24th; and it is more than possible that the parties relied upon the date of such acknowledgment as well as upon the recording after the levy.

The whole series of the correspondence between the parties is here. Thereafter Mr. Doster acted for Mr. Scully in various matters, and there are several passages which seem to carry the idea that Mr. Scully was looking to Mr. Doster as his general counsel. It is conceded, however, by Mr. Koehnle, that up to this time there was no relationship of counsel and client; and when he says that he showed him no abstract, and that Mr. Doster seemed to talk as though he knew it all, and Mr. Doster affirms that he knew nothing about the matter, the only reasonable explanation, consistent with good faith and honesty on the part of the various parties, is that some such question as has been suggested was propounded. Mr. Koehnle may have said that the title was all right, except that a mortgage was filed after the levy; perhaps may have said that it was acknowledged after. Under those circumstances Mr. Doster's saying to him that the attachment was prior to the mortgage, only gave information which was correct, upon the facts presented.

One other consideration should be noticed: Before a lawyer is punished by the enforcement of this strict rule, it should be made satisfactorily to appear that he did give information,—that he gave it as counsel, and upon facts presented to him fully and correctly by his client. Any general opinion as to the law, given by counsel upon a half statement of the facts by the client, ought not to prejudice the counsel. It is very evident that these gentlemen went to Marion county, not looking to Mr. Doster to protect their interests in all matters, believing themselves competent as real-estate men, and relying upon their own judgment; that they were in that business; and, before they can hold him to such a rigorous doctrine, it seems to me they should make it clear that they presented to him, as their counsel, the full facts, and got his opinion thereon. This is not proved. At least, it is probable, in my judgment, that nothing of that kind took place; and, as the burden is upon them, their defense must fail.

One other matter: There were tax-sale certificates outstanding, held by Mr. Edward Wilder, of Topeka. Mr. Doster was asked about these sales. He advised that they were illegal, because the taxes were excessive. His advice was correct. After this land was purchased at the sheriff's sale Mr. Koehnle wrote to Mr. Doster to see if he could not buy the tax-sale certificates from Mr. Wilder, and thereafter get a deed; and he did so. I do not see that that prejudices Mr. Doster's right to foreclose this mortgage. The tax deed may be in form, but it is not yet protected by the statute of limitations. While the deed cannot stand as a deed to defeat this foreclosure, yet the tax lien has not been destroyed. The defendant was under no obligations to pay these taxes,—taxes which accrued prior to his purchase at the sheriff's sale. I think that the deed should be set aside, and the taxes adjudged a lien prior to the mortgage. So there will be a decree in favor of the plaintiff for foreclosure of the mortgage, giving a lien subsequent to these taxes.