C. W. JEWELL, *et al.,* v. BENJAMIN F. SIMPSON.

1. CHATTEL MORTGAGE, *Void as to Execution Creditor.* Where a chattel mortgage is not deposited in the office of the register of deeds as prescribed by the statute, until after a judgment creditor of the mortgagor levies upon the property described therein and the mortgagee has no possession of the property mortgaged, the chattel mortgage is void as against the creditor obtaining a lien by his exe-

cution and levy. (Comp. Laws of 1885, ch. 68, § 9; *Ramsey v. Glenn*, 33 Kas. 271.)

2. TITLE, *When Not Conveyed.* A chattel mortgage signed and executed · by a firm having no title or interest in the property therein described, does not convey or transfer the legal or equitable title of the property to the alleged mortgagee.

### Error from Shawnee Superior Court.

THE opinion states the case.   Trial at the November Term, 1885, and judgment for defendant.   The plaintiff brings the case to this court.

*Jetmore & Son*, for plaintiff in error.

*Rossington, Smith & Dallas*, and *P. L. Soper*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by C. W. Jewell and J. F. Griffin, under the firm-name and style of the Topeka State Bank, against Benjamin F. Simpson, to recover four hundred dollars as damages for the alleged unlawful conversion of twenty head of hogs and two hundred bushels of wheat.   The plaintiffs claim the property by virtue of a chattel mortgage dated August 18, 1883, given by Davis & Son and A. J. Davis to them to secure the payment of a note for one hundred and sixty-eight dollars and seventy-five cents, executed by the same parties.   The property was seized on the 13th day of September, 1883, as the property of A. J. Davis, by Benjamin F. Simpson, as marshal, under an execution issued upon a judgment rendered in the circuit court of the United States for the district of Kansas, wherein John Carnes, *et al.*, were plaintiffs, and A. J. Davis was defendant, for seven hundred and ninety-two dollars and twenty-eight cents, and costs of the suit.   The property was sold by Simpson, as marshal, on October 30, 1883.   Although the mortgage was executed August 18, 1883, it was not filed for record until September 17, 1883, several days after the property was levied upon.   Upon the trial, when the plaintiffs rested with

their evidence, the defendant demurred thereto, which demurrer was sustained. Of this ruling the plaintiffs complain, and bring the case here.

The only question presented to this court is, whether the plaintiffs introduced sufficient evidence to prove their case. If A. J. Davis was the owner of the property embraced in the chattel mortgage, or had any interest therein subject to seizure on execution, then the effect of delaying the filing of the mortgage until after the property was seized on execution, rendered it void as against the judgment creditors.

The statute is as follows:

"Every mortgage or conveyance intended to operate as a mortgage of personal property, which shall not be accompanied by an immediate delivery, and be followed by an actual and ·continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be forthwith deposited in the office of the register of deeds in the county where the property shall then be situated, or, if the mortgagor be a resident of this state, then of the county of which he shall at the time be a resident." (Comp. Laws of 1885, ch. 68, § 9.)

In *Ramsey v. Glenn,* 33 Kas. 271, it was decided:

"If a creditor of the mortgagor of a chattel levies upon the property embraced in the mortgage, not accompanied by delivery and possession, before the mortgage is deposited in the office of the register of deeds in the manner prescribed by the statute, the attachment is a prior lien to the chattel mortgage."

(See also *Tyler v. Safford,* 31 Kas. 613; *Wilson v. Leslie,* 20 Ohio, 161; *Jones v. Graham,* 77 N. Y. 628; and Jones on Chattel Mortgages, §§ 237, 178.)

In *McVay v. English,* 30 Kas. 368, referred to as announcing a contrary doctrine, the mortgage was filed September 4, 1880, and the attachment was not levied until September 6, 1880, two days thereafter. In that case, the contention was that the chattel mortgage was void because it was not deposited in the office of the register of deeds immediately after its

execution. We held that the mere fact that the mortgagee omitted for several days or weeks to file his mortgage would not render it void; but we further held that the filing of the mortgage did not relate back so as to invalidate interests or rights obtained to the mortgaged property by creditors or other persons prior to the filing.

In the case of *Holden v. Garrett*, 23 Kas. 98, also cited as sustaining the contrary doctrine, the mortgage was upon real estate, and the statute relating to the filing of real-estate mortgages was construed to be qualified or limited by the provisions of the statute making judgments liens upon the real estate of the debtor. It was there held that no larger or other interest was taken by the levy of an execution upon real estate than is covered by the lien of the judgment thereon. The decision in that case, on account of the statute relating to judgment liens, is not applicable to chattel mortgages.

If A. J. Davis had no interest in the property seized under the execution, as he testified, the paramount question is, did the chattel mortgage convey to the plaintiffs the property therein described? We think not. The chattel mortgage recites upon its face that the parties of the first part are "A. J. Davis and George Davis." The mortgage is signed "Davis & Son and A. J. Davis." A. J. Davis testified that his sons George Davis and Harry Davis owned the property on the 18th of August, 1883, at the time of the execution of the mortgage; that his boys George and Harry Davis were partners together under the firm-name of "Davis & Sons;" that he did some business for them, on account of one of the boys being a mute, but that he had no interest in the business; that the firm of "Davis & Sons" had charge of the farm and owned all the property of the farm, including the hogs and wheat levied upon. A. J. Davis also testified that there was another firm, composed of himself and his son George, doing business under the firm-name and style of "Davis & Son;" that it was organized in 1881, and was engaged in selling farm machinery all over the state of Kansas. Upon the evidence of A. J. Davis it was clearly shown that the firm of "Davis

& Son," composed of himself and George Davis, were not the owners of the property mortgaged, and as a firm had no interest therein; therefore the mortgage executed by "Davis & Son" and by "A. J. Davis" did not and could not convey or transfer the partnership property owned by "Davis & Sons," a separate and distinct firm from "Davis & Son." Each of these firms was engaged in a separate and distinct occupation. If "Davis & Son" and "A. J. Davis" could not convey any legal title to the property embraced in the mortgage on account of all the property being owned by "Davis & Sons," a separate and distinct firm from "Davis & Son," then the plaintiffs obtained neither the legal nor the equitable title to the property described in the mortgage, as neither "Davis & Son" nor "A. J. Davis" had any legal or equitable title to convey or transfer.

It is suggested, however, that if the mortgage was irregularly signed through a mutual mistake, that the court could correct the mistake and reform the mortgage so as to make it the mortgage of "Davis & Sons," who were the owners of the property. To this it may be answered that there is nothing in the record showing, or tending to show, that the chattel mortgage was irregularly drawn up or signed through a mutual mistake of the parties. In the body of the mortgage A. J. Davis and George Davis are recited as parties of the first part. A. J. Davis says the reason he signed the mortgage "Davis & Son," was because one of his boys was absent in Ohio; so, from his own evidence, he intentionally and purposely signed it "Davis & Son." C. W. Jewell, one of the plaintiffs, and the only one who testified, does not claim that there was any mistake in drawing up the mortgage, or in signing the same. He testified in substance, among other things, that he considered A. J. Davis entirely good at the time of the execution of the chattel mortgage; that he supposed that he (A. J. Davis) was a member of the firm which made the application for the loan; that he said the firm of Davis & Son wanted to borrow the money; that his application was for Davis & Son; that he stated they would put up security on

the hogs and wheat; that the application was made in the name of the firm, and the security taken in the name of the firm. As all the evidence introduced upon the trial clearly shows that the firm of Davis & Sons carried on the farm, owned all the property on the farm, including the hogs and wheat mortgaged; and as neither "A. J. Davis" nor the firm of "Davis & Son" were the owners of or had any interest in the property mortgaged, the mortgage executed by them did not convey or transfer to the plaintiffs the property in controversy.

The only interest that George Davis had in the property mortgaged was as a member of the firm of "Davis & Sons;" but "Davis & Sons" did not convey, nor attempt to convey; therefore, George Davis, as a member of the firm of "Davis & Sons," made no transfer or conveyance of the property to the plaintiffs. The mortgage does not purport to convey or bind the property of "Davis & Sons." Upon the evidence introduced in the case, this action should have been brought in the name of "Davis & Sons," the firm composed of George and Harry Davis. If that firm is not estopped from setting up their title to the property in controversy by their actions at the sale, or otherwise, they are the parties entitled to recover, if there was any unlawful conversion of the personal property seized by the defendant upon execution.

The judgment of the district court will be affirmed.

VALENTINE, J., concurring.

JOHNSTON, J., having been of counsel, did not sit.