Curtis *v.* Root.

GEORGE CURTIS, Appellant, *v.* ANSON ROOT, Appellee.

APPEAL FROM THE COURT OF COMMON PLEAS OF THE CITY
OF ELGIN.

In order to affect a third person, by showing that the date and consideration of a deed are not true, the clearest proof should be adduced of his knowledge of such untruthfulness.

Purchasers at sheriff's sale are chargeable with such notice as the public records inform them of; and if a mortgage does not upon its face show a lien prior to that of the judgment, the purchaser is not bound to indulge in suspicions touching its fairness.

A levy upon personal property is not always a satisfaction of a judgment, even though the property was adequate; if without any fault of the sheriff or of the plaintiff, or by the instrumentality of the defendant, the property levied upon cannot be made available.

An appeal does not vacate the lien of the judgment, it only suspends its execution. A judgment during appeal not only holds its lien, but will extend it over property acquired pending the appeal.

THIS was an action of ejectment, brought by appellee, in the Circuit Court of Kane county. Declaration and plea in usual form. Venue changed from Kane to Kendall Circuit Court.

A jury was waived, and the cause tried by the court, and judgment was rendered for Curtis.

A new trial was granted to Root, under the statute.

The cause was again tried by court and jury. Verdict and judgment for Root.

A new trial was granted to Curtis.

There was a motion by Curtis to suppress depositions of J. P. Morgan and R. W. Padelford, which was overruled by the court.

The venue was changed by consent to the Court of Common Pleas of the city of Elgin.

At September term, 1860, of said Court of Common Pleas, the case was tried by the court and a jury. Verdict for Root. Curtis moved for new trial; overruled, and he excepted. Judgment entered on the verdict. Curtis appealed.

There was an agreed statement of facts in evidence, on the trial of the case, as follows:

That Weed, Masters & Weed obtained judgment in the Circuit Court of Kane county, at the April term, 1845, against Ruel Ambrose, for $833.72 and costs; and on the same day Asher Rossiter obtained judgment in said court against Ambrose for $361.49 and costs. That executions in both cases were immediately issued by order of the court, and were levied upon Ambrose's stock of goods at Elgin, of sufficient value to satisfy the same, which goods were afterwards released by the sheriff receiving a delivery bond, executed by Ambrose, with Root as surety, and Root took from Ambrose a chattel mortgage of said goods to indemnify him as such surety.

That Ambrose took an appeal, in both cases, to the Supreme Court, and executed appeal bonds, with Root as surety.

That afterwards, in July, 1845, Ambrose, with the consent of Root, exchanged the goods with J. P. Morgan and R. W. Padelford in part payment for the lands in question and some town property in Elgin. The lands in question were conveyed by said Morgan to Ambrose by deed, dated July 22, 1845, acknowledged July 28, and recorded August 7, 1845; and at the same time Padelford conveyed the town property to Ambrose, and took from Ambrose a mortgage on the same to secure the balance of the purchase money.

That Ambrose executed to Root a mortgage of the lands in question, and also the town property, which mortgage was dated and acknowledged the 1st day of August, 1845, and recorded August 7, 1845. (A copy of this mortgage was given in full in the agreed statement.) The commencement of this mortgage, including the recital and statement of the consideration, is in the following words and figures:

"This Indenture, made this first day of August, A. D. 1845, between Ruel Ambrose, and Rebecca his wife, of the county of Kane, and State of Illinois, of the first part, and Anson Root, of the same place, party of the second part, witnesseth as follows: Whereas the said Root, on or about the 24th day of April, A. D. 1845, signed, as surety for said Ambrose, a bond to the sheriff of Kane county, for the forthcoming of certain goods and merchandise, seized by said sheriff on two

executions, issued out of the clerk's office of the Circuit Court of said Kane county, in favor of Weed, Masters & Weed, and Asher Rossiter, the whole amount being        dollars and        ; and whereas the said Root also signed, as surety for said Ambrose, two certain appeal bonds in the cases of Weed, Masters & Weed, and Asher Rossiter, against said Ambrose, tried at the last term of the said Kane Circuit Court, and appealed to the Supreme Court, the whole amount of said appeal bond being eighteen hundred dollars. Now, therefore, for the better securing of said Root against any liabilities he may incur in consequence of having signed said bonds, and also in consideration of one dollar to them by the said Root in hand paid, have granted, bargained, and conveyed," etc., (giving description of the lands, and providing as follows:) "That if the said Ambrose, his heirs or assigns, shall well and truly release and discharge the said Root from all liabilities incurred in consequence of signing said bonds, then these presents to be and remain null and void."

The certificate of acknowledgment signed by Samuel Hunting, justice of the peace, dated "this first day of August, A. D. 1845."

That at the December term, 1845, of Supreme Court, said appeals were dismissed for want of prosecution, and procedendo issued to the Circuit Court.

That on the 14th of July, 1846, an execution issued on said judgment in favor of Weed, Masters & Weed, which was levied on the lands in question, and after being duly advertised, the lands were sold by the sheriff, on the 15th of August, 1846, to Harvey. Harvey assigned the certificate of sale to Spencer, for value received. Spencer afterwards assigned to Havens; and on the 7th day of February, 1850, the sheriff executed a deed to Havens. No redemption having been made, Havens afterwards conveyed to Curtis, the appellant, by deed, duly acknowledged and recorded before the commencement of this suit.

That on the 18th February, 1847, Root filed his bill to foreclose his mortgage against Ambrose and wife, and at the February term, 1849, obtained a decree against Ambrose for

$567.26, and for sale of the lands in question, which were sold to Root in August, 1849, and deed executed to him November 15, 1850, by a special commissioner.

That all judgments, decrees, executions, sales and conveyances above mentioned were in due form, and that Curtis was in possession at the commencement of this suit.

Root then offered in evidence the deposition of J. P. Morgan and R. W. Padelford. Curtis objected to the reading of the depositions, and to each interrogatory and answer therein separately. All of his objections were overruled by the court, and the depositions allowed to be read as evidence, to which several rulings of the court Curtis at the time excepted.

*Morgan* testified in his deposition, that he was acquainted with Root and Ruel Ambrose, but not with Curtis; that he was once the owner of the land in dispute, and sold it to Ambrose, and received his pay in goods.

The remainder of his deposition follows:

*Int.* 7. State who was in possession of the goods at the time of the exchange, and state fully how the trade was made and with whom, and who put you in possession of the goods. Objected to by defendant.

*Ans.* Ruel Ambrose, Mr. Padelford and myself exchanged a farm and a house and lot in Elgin for the goods. Mr. Ambrose is the man we dealt with altogether. There was a levy made on the goods, in which Dr. Root was the receiptor, in which Mr. Ambrose agreed to have discharged. I did my business with Mr. Ambrose. Dr. Root gave us a discharge from it, so that we were satisfied.

*Int.* 8. Do you know of Dr. Root taking any security of Mr. Ambrose in consideration of giving said release? if so, state what it was. Objected to by defendant.

*Ans.* I think he had a mortgage on the property on the farm, the farm I sold to Ambrose.

*Int.* 9. State if the sale of the said land to Ambrose, the release of the said goods by Root, and the mortgage of the said land to Root by Ambrose, was one and the same transaction or bargain. Objected to by defendant.

*Ans.* I considered it so.

*Int.* 10. Were the goods you speak of taken by you in payment for the land?

*Ans.* Yes, sir.

*Int.* 11. Was the mortgage you spoke of given by Root to secure him for letting the said goods go as payment on said farm? Objected to by defendant.

*Ans.* As I said before, we did the business with Mr. Ambrose, receiving the release of the goods from Mr. Root. I think it was.

*Int.* 12. State fully what you know, if anything, about the making out of the papers relating to the whole bargain.

*Ans.* I think Mr. Padelford made out the papers—a mortgage to Dr. Root signed by Mr. Ambrose. I deeded to Ruel Ambrose the farm. Mr. Padelford deeded to him the house and lot.

*Int.* 13. State whether the said deeds and the mortgage to said Root were made and signed at the same time or not. Objected to by defendant.

*Ans.* I don't know. I can't say whether it was at the same time or not. I think it was about at the same time.

*Int.* 14. Did Padelford make out the deeds, release and mortgage, all at the same time?

*Ans.* I think he did, or about the same time; it was considered the same transaction.

Padelford's deposition:

*Int.* 2. Are you acquainted with the parties to this suit, and Ruel Ambrose?

*Ans.* I am acquainted with Anson Root and Ruel Ambrose. I don't know Curtis.

*Int.* 3. Did you and J. P. Morgan ever exchange any land for goods in Elgin with Ruel Ambrose and Anson Root? if yea, state all you know in relation to said exchange—state fully the whole transaction.

*Ans.* J. P. Morgan and myself exchanged real estate with Ruel Ambrose for goods. The goods prior to this exchange had been levied upon by the sheriff against Ruel Ambrose. Morgan and myself refused to make the exchange without being indemnified against this levy; Anson Root was the

receiptor of the goods to the sheriff. Anson Root executed a bond of indemnity to Morgan and myself, indemnifying us against any loss in consequence of the levy, whereupon I executed to him, Ruel Ambrose, a deed of the house and lot in Elgin, and J. P. Morgan executed a deed to Ruel Ambrose of the farm. Ruel Ambrose made to Anson Root a mortgage on the property sold by Morgan and myself to Ambrose, to secure Root for making the bond of indemnity to Morgan and myself.

*Int.* 4. Did Root at this time make to you and Morgan a release of any claim to said goods?

*Ans.* I think nothing but the bond of indemnity.

*Int.* 5. State whether Root required of Ambrose security before he would release or make said bond of indemnity; if yea, state if he obtained security, and what it was.

*Ans.* He required it, and obtained security on the premises sold him by Morgan and myself.

*Int.* 6. Did you draw the deeds from you and Morgan to Ambrose, and the mortgage from Ambrose to Root, spoken of? if yea, state if it was all done at the same time or not.

*Ans.* I think I did. It is possible that I did not draw the mortgage, but I think I did. My impression is that it was all done at the same time; it is a long time ago, and I don't pretend to recollect every minutia.

*Int.* 7. State what you know of the execution of the said deeds and mortgage. State particularly as to the time of their execution; whether they were executed at the same time or not, and if not, the reason why. Objected to by defendant.

*Ans.* The deeds were executed I think at the same time, and the mortgage before the papers were delivered; that is my impression. I had taken back from Ambrose a mortgage on the house and lots that I had sold to Ambrose, and it was the understanding that that should be the first lien. It is possible that Root's mortgage was dated a little later, in order to make my lien prior to the other.

*Int.* 8. State if said deeds and mortgage were then considered as relating to the one transaction or bargain that you have stated.

*Ans.* I considered that they were; we would not buy the goods of Ambrose unless we were indemnified, and Root would not indemnify unless he was secured.

*Int.* 9. State if you know whether the land deeded by Morgan to Ambrose, and mortgage by Ambrose to Root, in the transaction you have mentioned, is the same land which is in controversy between the parties to this suit. State your knowledge on that subject.

*Ans.* If it is the same suit that I was a witness in at Oswego, in Kendall county, it is the same.

Examination closed on part of plaintiff.

*Int.* 1. By defendant. Was the mortgage you have mentioned from Ambrose to yourself, delivered to you, before you executed and *delivered* the deed of the house and lots described in said mortgage to Ambrose?

*Ans.* I think not.

*Int.* 2. Look at the mortgage now shown you, and state whether it is the same mortgage you have referred to, as given by Ambrose to yourself. If so, state the date of the mortgage, the date of the acknowledgment, and the date of the recording of the same, as appears by the certificate of the recorder thereon.

*Ans.* It is the same mortgage. The date is July 22, 1845 —the date of the acknowledgment is July 28, 1845—the certificate of the recorder shows that it was recorded July 30, 1845.

*Int.* 3. Was the mortgage from Ambrose to Root, which you have mentioned, executed and delivered prior to the recording of the mortgage to yourself, referred to in your last answer?

*Ans.* I think so.

*R. W. Padelford*, sworn as a witness for plaintiff, Root, and testified that he knew Harvey and Spencer. Harvey was attorney for Weed, Masters & Weed. Spencer came here for the purpose of making a settlement of debts against Ambrose to persons in New York. Weed, Masters & Weed, and Rossiter, were creditors. Don't recollect as to Haven or Curtis. Spencer bought a mortgage of witness on the house and

lot. Thinks Spencer represented one Sackett; would not say that he represented Weed, Masters & Weed. (The original mortgage from Ambrose to Root shown to witness.) "This mortgage is the one I referred to in my deposition. I think the body of the mortgage is in Judge Wilson's handwriting. The body of the mortgage is not in my handwriting. I know that the mortgage was present during the transaction. •I don't know what day, whether it was the same day that the deed was made or not. I think that the mortgage was delivered at the same time with all the rest." The mortgage from Am-brose to witness was shown, and identified by him as the mortgage referred to in his deposition.

The defendant then read in evidence to the jury the cer-tificate of the recorder indorsed on said last mentioned mort-gage, as follows: "Received for record, July 30th, A. D. 1845, at 10 o'clock A. M., and recorded the same in book marked A. of Mortgages, at pages 167 and 168. Geo. W. Gorton, Recorder Kane Co., Ill."

P. R. WRIGHT, for Appellant.

The depositions of Morgan and Padelford were not admis-sible to change the character of the mortgage from Ambrose to Root. "Parol evidence is not admissible to contradict or vary or add to the terms of a deed." 1 Phil. on Ev. 548, and note 661 of Cowen & Hill's notes, and cases there cited. 1 Phil. on Ev. 549, and note 964, Cowen and Hill's; *Stephens* v. *Cooper*, 1 Johns. Ch. Rep. 429; *Hunt* v. *Ronsmaniers' Adm'rs*, 8 Wheat. 211; *Sprigg* v. *Bank of Mount Pleasant*, 14 Peters, 206; *Schermerhorn* v. *Vanderheyden*, 1 Johns. Rep. 140; *Howes* v. *Barker*, 3 Johns. Rep. 506; *Means* v. *Lan-singh*, 1 Hopkins' Ch. Rep. 134; *Jackson* v. *Jackson*, 5 Cow. 173; *Lane* v. *Sharp*, 3 Scam. 566; *Panton* v. *Tefft*, 22 Ill. 366.

The judgment of Weed, Masters & Weed, was a lien on the lands in question, although the title of Ambrose was not acquired until after the term at which said judgment was ren-dered. Rev. Stat. of Ill., chap. 57, sec. 1; 4 Kent's Com. 434, 435; ib. 173.

The doctrine was fully recognized in New York, under the statute of 1813, of that State, which was substantially and almost literally like the statute of Illinois on this point, that the judgment binds the lands acquired by the judgment debtor after as well as those owned at the time of judgment. *Stow* v. *Tifft*, 15 Johns. Rep. 464, A. D. 1818. See also Indiana statute on this subject. 1 Blackf. 401, and 1 Cart. Rep. 259.

The appeal from the judgment of Weed, Masters & Weed, which was afterwards dismissed, did not affect the lien of the judgment. It only suspended proceedings to enforce the judgment until the dismissal of the appeal. *Stuble et al.* v. *Walpole*, Wright's Ohio Rep. 447 ; *Overton* v. *Perkins*, Mart. & Yerg. 367.

B. C. COOK, and W. B. PLATO, for Appellee.

This identical case, in precisely its present shape, has been before this court before, and every question which is now presented was then decided. *Curtis* v. *Root*, 20 Ill. 53.

The main point relied upon by appellant is, that it was not competent to prove by parol that the mortgage given by Ambrose to Root, was given to secure the purchase money, because the mortgage does not expressly recite the fact. The particular parol proof objected to, is the depositions of Morgan and Padelford. *Kenzie* v. *Penrose*, 2 Scam. 521 ; *Sidders* v. *Riley*, 22 Ill. 109 ; *Telson* v. *Moulton*, 23 Ill. 648 ; *Miller* v. *Feltenham*, 31 Pa. State R. 252 ; *Smith* v. *Baltame*, 40 Eng. L. & E. 507 ; *Heaton* v. *Squires*, 9 Ind. 27 ; *Melvil* v. *Fellows*, 33 N. N. 27 ; *Despaul* v. *Walbridge*, 15 N. Y. ; 1 Smith, 374 ; *Dow* v. *Chamberlain*, 5 McLean, 281.

It would seem that an appeal would destroy the lien, because, first, an appeal vacates the judgment. *Stattierd* v. *Beattie*, 36 N. H. 455; *Dewey* v. *Latson*, 6 Cal. R. 130.

CATON, C. J. Admitting, for the present, that as between the parties to a deed, and even as to third persons with notice, it is competent to show by parol, that the consideration and date of the deed, as expressed on its face, are different from the true consideration and date, in order to affect such third

person, with such facts as do not appear on the face of the deed, there should be clear proof that he had knowledge of such extraneous facts thus proved by parol, and not appearing upon the face of the deed, before he can be affected by them. Now it is claimed that this mortgage was given to secure the purchase money of the land, and was executed at the same time that the deed was executed. We now have the mortgage before us, and upon its face it shows that it was given to indemnify the mortgagee against loss, which he might incur by reason of his having executed certain bonds as security for the mortgagor, and the date of the mortgage is nine days subsequent to the date of the deed, and three days subsequent to the date of the acknowledgment of the deed. The date of the acknowledgment of the mortgage is the same as that of the mortgage itself. *Prima facie,* at least, the object of this mortgage was not to secure the purchase money of the land, nor did it appear to have been executed at the same time with the deed, so that the execution of both might constitute one transaction. It was the duty of the purchaser at the sheriff's sale, and his grantees, to examine the records, and they are chargeable with notice of all the facts of which the mortgage could inform them. On its face, this mortgage did not show that it created a lien prior to that of the judgment. When the purchaser saw this was so, he was not bound to inquire whether the mortgage did not express on its face a falsehood. He was not bound to suspect that the mortgage was a trap to mislead him. If he is to be charged with any extraneous facts, qualifying or contradicting the face of the mortgage, it should only be done upon clear and satisfactory proof that he had actual knowledge of such facts. Such proof is entirely wanting in this case. For aught that appears, the land was purchased at the sheriff's sale, upon the faith of the face of the record. If we are right in the principles we have stated, then the fourth instruction asked for the defendant should have been given without qualification. It is this:

"That the mortgage from Ambrose to Root does not purport on its face to be given to secure the payment of purchase

money, but for an entirely different consideration, and even if the jury believe, from the evidence, that said mortgage was in fact given to secure the payment of purchase money, and executed at the same time with the deed from Morgan to Ambrose, such facts cannot affect the rights of the defendant, and the jury must find for the defendant, unless they also believe, from the evidence, that the defendant had notice of such facts prior to his purchase of said land, which notice is not to be inferred, but must be proven by the plaintiff."

This instruction the court qualified, as follows : " But the recording of the mortgage before the purchase at the sheriff's sale, if such fact is in proof, is sufficient to put the purchaser on his guard."

In this, we think the court was undoubtedly wrong. It could not put him on his guard in reference to a different state of facts than those expressed on the face of the mortgage, but on the other hand was well calculated to induce him to repose in security upon those facts. It was upon this constructive notice, thus intimated by the court to be sufficient to charge him, that the jury found a verdict for the plaintiff.

But it is insisted that the judgment was satisfied, and the lien destroyed, by the levy upon sufficient personal property to satisfy it. Such a levy is not an absolute satisfaction of the judgment, and where without any fault of the sheriff or of the plaintiff, or, at least, if by the instrumentality of the defendant, the property levied upon cannot be made available to the payment of the judgment, it is not a satisfaction. Here, by the action of the judgment debtor and this mortgagee, the property was taken from the custody of the sheriff, and never returned to him, as it was their duty, under the law and their bond, to have done. This was no satisfaction.

Again, it is claimed, that while judgment was pending before this court on appeal, it was not an existing lien on the property, and that during that time the mortgage lien attached, and thus acquired a priority over the judgment. The appeal did not vacate or destroy the lien of the judgment. It merely suspended its execution. It was in full force all the

time, as a vital judgment of the court, not only capable of holding all liens to which it attached at the term of its rendition, but it was capable of attaching to other property of which the judgment debtor might become the owner in the meantime, and thus subject such newly acquired property to its influence.

The judgment must be reversed, and the cause remanded.

*Judgment reversed.*