MONROE C. CRAWFORD *et al.*

*v.*

RICHARD RICHESON *et al.*

*Filed at Mt. Vernon January 18, 1882.*

1. LIEN—*collector's bond—after-acquired lands.* The statutory lien created by the approval and recording of a collector's bond attaches not only to the lands then owned by the principal, but also to after-acquired lands, the same as in the case of a judgment.

2. LIEN—SURETY—*extension of time for payment of taxes—subrogation of surety.* An act of the legislature extending the time of payment of taxes to a collector of the revenue, with the written assent of his sureties, without notice to the General Assembly that others had purchased lands of the collector after the approval and recording of his bond, will not discharge the lien of the State on such lands, nor prevent the collector's sureties answering for his default from being subrogated in equity to such lien.

3. SAME—*effect of surety taking indemnity from his principal, as to his right of subrogation.* The taking of a mortgage by a surety of a collector as an indemnity against loss, is no waiver of any right of subrogation in favor of the sureties to the lien in favor of the State on the collector's lands, where such sureties have been compelled to pay the State for the default of the collector.

4. SAME—*release by surety of part of his indemnity, without notice of equities in others—effect upon his right of subrogation.* The release by a surety of a county collector of a part of a mortgage given for his indemnification, without notice of the equitable rights of a purchaser of land from the collector which was subject to the lien of his bond, will not defeat the right of this and other sureties of the collector, after having paid judgments against them in a suit on the collector's bond, to be subrogated to the lien created by statute on his lands in favor of the State.

5. SAME—*right of surety to require lien against principal's land to be first enforced.* The sureties upon a collector's bond have the right in equity, upon the recovery of a judgment against them upon the bond, and before its payment by them, to file a bill and require the lands of the collector subject to the lien of his bond, though they have passed into the hands of innocent purchasers, to be sold for the payment of such judgment, and upon supplemental bill showing payment of the judgment, to be subrogated to the lien of the State, and have the lands sold for their reimbursement.

6. SAME—*sale of lands subject to lien, in inverse order of alienation.* Where a statutory lien, as that of a collector's bond, attaches to land, a part of which was acquired after the recording of the bond, and such lands have been sold and conveyed by the collector to different persons and at different times, it is proper to order their sale in the inverse order of their alienation, on bill by his sureties to be subrogated to the lien of the State, and this without regard to the times of acquiring the title to the different parcels which were purchased after the recording of the collector's bond.

7. LIEN—HOMESTEAD—*as to lien of collector's bond.* A homestead not exceeding $1000 in value, owned and occupied by a county collector as his residence, is not subject to the statutory lien of his bond; but if it exceeds that value, then the excess, but only the excess, is subject to such lien.

8. SAME — *whether lien attaches before the homestead is occupied.* Where, after the recording of a collector's bond, which is declared a lien on all his lands, he purchases land for a homestead, and within a reasonable

time thereafter moves upon and occupies it as such, the land so bought will be considered as becoming his homestead from the time of acquiring the title, and the lien will not attach, although a short space of time may have intervened between its purchase and occupancy.

9. SAME—*manner of asserting homestead right.* Where a bill to enforce the lien of a collector's bond on land owned and sold by him, before the bond was discharged, alleged that the bond was a lien on the land, which the answer simply denied, it was *held,* that under the issue thus formed evidence of a homestead right was competent, as going to show the bond was never a lien on the land.

10. SAME—*of the right of homestead in case of exchange of lands.* During the pendency of a statutory lien under a collector's bond, the collector acquired a tract of land as his homestead, which he exchanged for another, occupying the latter as a homestead, it was *held,* on bill by the sureties of the collector, who had been compelled to pay on his default, to be subrogated to the lien and have these lands sold under the lien, that in consideration of the equitable rights of purchasers from the collector, the sureties should be subrogated as to only one of the two tracts, viz: the tract last acquired, and as to it only as to the excess in value above $1000.

11. But where a house and two acres of land not subject to the lien, as being of less value than $1000, together with twenty-eight acres of land subject to the lien, were exchanged for one hundred and twenty acres of other land and $1000 in money, it was *held,* that the rule could not be applied, it being no exchange proper, in the legal sense.

APPEAL from the Circuit Court of Perry county; the Hon. W. H. SNYDER, Judge, presiding.

The bill in chancery in this case alleges that Marion D. Hoge was collector of taxes of Franklin county for the year 1867; that on December 5, 1867, he gave bond, as required by the statute, for the faithful performance of his duties as such collector, which was duly approved and recorded, and that the bond was signed by the complainants, and Daniel Mooneyham and Lewis G. Payne, as sureties for Hoge; that there came to the hands of Hoge, as such collector, a large sum of money belonging to Franklin county, which he failed to account for, and that a judgment was afterwards rendered in the Franklin county circuit court against Hoge and his sureties for the amount due the county, which judgment the

23—101 ILL.

complainants and said Daniel Mooneyham paid and discharged; that the collector was also in default in regard to taxes due the State which he had collected, for which the State recovered judgment in the Supreme Court against him and his sureties, and which was not paid at the time of filing the bill. A supplemental bill was filed, showing that since filing the original bill the latter judgment had been paid and discharged by the complainants and Mooneyham.

The bill alleges that at the date and recording of the bond the collector was the owner of two certain parcels of real estate described in the bill, and that after the date and recording of the bond he became the owner of certain other parcels of real estate, which are described in the bill, with a statement of the date on which he acquired title to each tract, after the recording of the bond; and that the collector sold and conveyed all his real estate before either of the aforementioned judgments was recovered. The bill charges that the bond of the collector, from and after the time it was recorded, became a lien on all the real estate which he owned at the time the bond was recorded, and also upon all the real estate subsequently acquired by the collector, and that the lien is still in force; that Hoge, the collector, and the said Lewis G. Payne, one of the sureties, are both insolvent, and that neither of them paid any part of said judgments; Hoge, and all those claiming title to these lands through him, and the said Payne and Mooneyham, are made defendants to the bill. The prayer is, that enough of the real estate to pay the judgment in the Supreme Court in favor of the State be decreed to be subject to the judgment, and be sold to pay the same, and that the remainder of the real estate, or so much as may be necessary, be sold to pay the complainants, with interest, the amounts by them paid on the judgment in favor of Franklin county. Answers were filed denying the allegations of the bill, proofs taken, and upon hearing, the court decreed according to the prayer of the bill, and that

the lands be sold in the inverse order of their alienation by Hoge. The defendants appealed.

Messrs. DUFF, CRAWFORD & WILLIAMS, for the appellants:

The statutory lien of a collector's bond does not extend to after-acquired lands. *Calhoun* v. *Snyder*, 6 Binn. 135; *Roads* v. *Simms*, 1 Ham. 281; *Harrington* v. *Sharp*, 1 G. Green, 131; Freeman on Judgments, sec. 367.

Liens of this kind are strictly construed. *Brady* v. *Anderson*, 24 Ill. 112; *McCoy* v. *Morrow*, 18 id. 523; *Canal Co.* v. *Gordon*, 6 Wall. 561.

By accepting and appropriating another indemnity after the default, the complainants lost all right of subrogation to any security in favor of the State. *Cooper* v. *Jenkins*, 3 Beav. 337; *Cornwell's Appeal*, 7 Watts & S. 305.

By appropriating this indemnity they lost the privilege of sureties, and became principals to that extent. *Smith* v. *Steel's Estate*, 25 Vt. 427; *Chilton* v. *Robbins*, 4 Ala. 22; *Silvey* v. *Dowell et al.* 53 Ill. 260; *Cogswell* v. *Ruggles*, 62 id. 402.

The right of subrogation by a surety never exists until the whole debt is actually paid. *Field* v. *Hamilton*, 45 Vt. 35; *Gilliam* v. *Erselman*, 5 Sneed, 86; *Magee* v. *Leggett*, 38 Miss. 139; Brandt on Suretyship, sec. 261.

The appellees, by agreeing to the extension of time to Hoge, and stipulating that it should not work their release, waived all right of being subrogated to any supposed lien against the lands of third parties not consenting to the extension. They thereby assumed new relations to the State. *Bailey* v. *Brownfield*, 8 Harris, 41; *Oakley* v. *Parsheller*, 10 Bligh, N. R. 548; *Lime Rock Bank* v. *Mallett*, 34 Maine, 547; Story's Equity Jur. sec. 502 b.

The suspension of the remedy is a waiver of the lien, between creditors and third parties. *Au Sable River Boom* v. *Sanborn*, 36 Mich. 358; *Howe* v. *Frazier*, 2 Rob. (La.) 424;

*Hartwell* v. *Smith*, 15 Ohio, (N. S.) 200; *Wilbur* v. *Ross et al.* 26 Ill. 221.

But further, the State, by this extension of time to Hoge, released and discharged all his sureties who did not agree to the extension. *Davis* v. *People*, 1 Gilm. 409; *People* v. *Mc-Hatton*, 2 id. 638; *Johnson* v. *Harker*, 8 Heisk. 388; Brandt on Suretyship, sec. 296.

Where property is subject to answer for the debt of another person, it occupies the position of a security or guarantor, and anything which would discharge an individual security, will, under similar circumstances, discharge such property. *Robinson* v. *Magee*, 1 Vesey, Sr. 251; *Royal C. B.* v. *Payne*, 19 Grant's Ch. 180; *Christener* v. *Brown*, 16 Iowa, 130; *Denison* v. *Gibron*, 24 Mich. 187; *Rowan* v. *Sharp's Rifle Co.* 83 Conn. 1; *Union Bank* v. *Govan*, 10 Smedes & Mar. (Miss.) 333; *White* v. *Ault*, 19 Ga. 551; *Ryan* v. *Shaw*, 14 Ill. 20.

And where land subject to a judgment lien is sold by the judgment debtor to a third party for its full value, such land occupies the position of security, and is subject to be discharged from the judgment lien by the acts of the creditor, like any other security. *Barnes* v. *Mott*, 64 N. Y. 377; *Leffingwell* v. *Freyer*, 21 Wis. 392; *Lowery* v. *McKinney*, 68 Pa. St. 294.

If by this extension of time to Hoge the State lost its lien on these lands, then it had no rights in this subject to which appellees could be subrogated.

As to the right to enforce the statutory lien against lands in case of an exchange, counsel referred to the rule as to dower, showing it could be enforced only as to one tract. 1 Scribner on Dower, 271; Park on Dower, 261; 1 Hilliard on Real Estate, 168; *Butler & Baker's Case*, 3 Leon. 271.

A judgment creates no lien against the homestead. *Green* v. *Marks*, 25 Ill. 221; *Pardee* v. *Lindley*, 31 id. 174; *Hartwell* v. *McDonald*, 69 id. 293.

Nor does the lien given by this bond attach to the homestead. *Hume et al.* v. *Gossett*, 43 Ill. 297.

Nor does this section 5 of the Revenue law "in any way affect the homestead estate." *Trustees of Schools* v. *Harvey et ux.* 94 Ill. 394.

That a judgment debtor may acquire a homestead free from the lien of any judgment against him, see *Campbell* v. *McManus*, 32 Texas, 442; *McManus* v. *Campbell*, 37 id. 267; *Cipperly* v. *Roads*, 53 Ill. 346; *Culver* v. *Rogers*, 28 Cal. 250; *Edmonson* v. *Meacham*, 50 Miss. 35; *North* v. *Shearn*, 15 Texas, 174; *In re Henker*, 2 Sawyer, 305; *Hawthorn* v. *Smith*, 3 Nev. 182; Thompson on Homestead, secs. 305, 306; *Monroe* v. *May*, 9 Kan. 466; *Edwards* v. *Fry*, 9 id. 417.

Mr. W. H. WILLIAMS, for the appellants Overturf, Biby, and the heirs of John McFall, made the following among other legal points :

The right to be subrogated depends upon principles of equity, and not upon contract. *Mathews* v. *Aiken*, 1 Comst. 595; *Salmon* v. *Clagett*, 3 Bland's Ch. 173; *Kirkpatrick* v. *Howk*, 80 Ill. 122.

The right of subrogation is an inherent and natural equity, growing out of the circumstances of the case. 24 Miss. 665.

And subrogation is the transfusion of one creditor to another, with the same or modified rights. Burrell's Law Dict., title "Subrogation."

And hence the sureties can obtain no greater right, or attain a better position as regards the principal debtor, than was held by the original creditor. If the creditor has taken collateral security, he holds the same as trustee for the benefit of the sureties. 1 Story's Equity, 477, *et seq.; Kirkpatrick* v. *Howk*, 80 Ill. 122; *Hall, Admr.* v. *Hoxsey et al.* 84 id. 618; *Phares* v. *Barbour*, 49 id. 370.

And if the creditor, without the consent of the surety, releases or discharges such collateral security, the surety is

discharged to the extent of such collateral security. *Rogers* v. *School Trustees*, 46 Ill. 428; *Hall* v. *Hoxsey*, 84 id. 618; *Phares* v. *Barbour*, 49 id. 370. And we hold the converse of the proposition to be true, that if the creditor, with the consent of the surety, releases such collateral security, such surety is not discharged.

An extension by a creditor to his debtor is a discharge of the surety not consenting thereto. *Woolford* v. *Daw*, 34 Ill. 434; *Crossman* v. *Wohlleben*, 90 id. 537; *Davis* v. *People*, 1 Gilm. 409; *Waters et al.* v. *Simpson et al.* 2 id. 571; *People* v. *McHatton*, id. 638; *Governor* v. *Lagow et al.* 43 Ill. 135.

Then, by consenting to this extension, the sureties are not released, and as to them the act of the legislature and their stipulation amounts simply to a suspension of the remedy. *Parmelee et al.* v. *Lawrence*, 44 Ill. 405; Parsons on Contracts, vol. 1, p. 27; id. vol. 2, p. 27.

And if this had been a judgment lien, and an execution issued thereon and levied upon lands, and the levy released by and with the consent of the plaintiff in the execution, the lien would be gone, at least as to third parties who acquired title during the suspension. Freeman on Executions, sec. 271; Freeman on Judgments, sec. 379; *Au Sable River Boom* v. *Sanborn*, 36 Mich. 358; *Waters et al.* v. *Simpson et al.* 2 Gilm. 574.

Mr. THOMAS J. LAYMAN, and Messrs. HAMMACK & DAVIS, for the appellees:

The statute making the bond a lien was to secure public rights, and it seems clear that the legislature, by using the same language in making the bond a lien, intended to give to the public at least as many rights as they gave to individuals under the statute making judgments a lien. Real estate acquired by a judgment debtor after the rendition of a judgment, becomes subject to the statutory lien of the judgment. *Curtis* v. *Root*, 28 Ill. 367; *Wales et al.* v. *Bogue*, 31 id. 367;

*Root* v. *Curtis,* 38 id. 192; Freeman on Judgments, sec. 367, and notes.

The statutory lien of a judgment binds all lands owned by the sureties at or subsequent to the execution of the bond, though alienated before the judgment of affirmance is pronounced.    Freeman on Judgments, sec. 376; *Berry* v. *Shuller,* 25 Texas, (supp.) p. 140.

The lien attached the moment Hoge acquired title to the lands.    Freeman on Judgments, sec. 368; *Moody* v. *Harper,* 25 Miss. 484.

Where a surety in an appeal bond, on the judgment being affirmed, pays the judgment, he is entitled to be substituted to the rights of the creditor, in respect to the lien of his judgment.    *McClung* v. *Bierne,* 10 Leigh, 394.

It is generally conceded that the lien of a mortgage is not impaired by taking another bond or note for the debt, or extending the time of payment.    *Taft* v. *Boyd,* 13 Allen, 84; *Chase* v. *Abbott,* 20 Iowa, 54; *Bailey* v. *Myrick,* 50 Maine, 171.

This is true even when the new securities bear the name of a third person as maker, obligor or indorser.    2 Am. Leading Cases, 376 (5th ed.)    The rule was laid down in *Pomeroy* v. *Rice,* 16 Pick. 22, and *Fowler* v. *Buck,* 23 id. 239.    A mortgage will remain in force as long as the debt or obligation which it was intended to secure, subsists, notwithstanding any formal change.    *Cessna* v. *Haines,* 18 Ind. 496; *Williams* v. *Kerr,* 6 Wis. 534; *Parkhurst* v. *Cummings,* 56 Maine, 155; *The Bank* v. *Friend,* 3 Barb. Ch. 393; *Dunham* v. *Day,* 15 Johns. 555; *Bolles* v. *Chauncey,* 8 Conn. 389; *Pond* v. *Clark,* 14 id. 334; *Bosswell* v. *Goodman,* 31 id. 74; *Gault* v. *McGrath,* 8 Casey, 392; *Fowler et al.* v. *Elwood,* 66 Ill. 438.

Where land which is subject to the lien of a mortgage or other paramount incumbrance, is sold in parcels successively to different persons, the buyers are *prima facie* chargeable in the inverse order of alienation.    *James* v. *Hubbard,* 1 Paige,

228; *Governeur* v. *Freyer*, 4 Iowa, 47; *Guion* v. *Knapp*, 6 id. 35; *Patty* v. *Pease*, 8 id. 279; *Skeel* v. *Spaker*, id. 182; *Chapman* v. *West*, 17 N. Y. 125; *Jones* v. *Myrick*, 8 Grattan, 179; *Cooper* v. *Bigley*, 13 Mich. 463; *The Howard Ins. Co.* v. *Halsey*, 4 Selden, 271; *Nackin* v. *Stanley*, 10 S. &. R. 450; *Paxton* v. *Harrier*, 1 Jones, 312; *Hunt* v. *Mansfield*, 31 Conn. 478; *Thompson* v. *Murray*, 3 Hill's Ch. 204.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The evidence sustains the averments of fact in the bill. There is no dispute about the facts. The controversy is as to the legal conclusion from the facts.

Touching the lien of the collector's bond, the provision of the statute is: "Said bond, when approved and recorded, shall be a lien against the real estate of the collector, until he shall have complied with the conditions thereof." Rev. Stat. 1874, p. 882, sec. 166.

The point is made, that this lien given by the statute does not extend to after-acquired lands. The words of the statute give the lien against the real estate of the collector generally, without restriction as to the time of its acquirement, and we see no reason for imposing any by construction. There is no essential difference in this respect between the language of the statute giving the lien of the collector's bond, and that making a judgment a lien upon real estate; and it has ever been held in this State, that the real estate acquired by a judgment debtor after the rendition of the judgment, becomes subject to the statutory lien of the judgment. *Curtis* v. *Root*, 28 Ill. 367; *Wales* v. *Bogue*, 31 id. 464; *Root* v. *Curtis*, 38 id. 192; and see Freeman on Judgments, sec. 367, and note. We perceive no reason why the same rule of construction of the statute in this respect should not be applied to both these liens.

It is said that the sureties of Hoge accepted another indemnity than this lien, and that they have never accounted

for part of it, and that they thereby waived their rights to subrogation. All the foundation for this is, that Hoge made a mortgage to Mooneyham, one of the sureties, of 108 acres of land, for his indemnification as surety; that Mooneyham afterward released 20 acres of the land, and foreclosed the mortgage on the remaining 88 acres, and conveyed to the complainants, in pursuance of a decree of court to that effect, fifteen-sixteenths of this land acquired by the foreclosure. As to the release of the 20 acres, it simply appears the release was made without notice to the sureties of any interest or equity of the defendants, so as to preclude Mooneyham from dealing freely with Hoge, and releasing to him this 20 acres, without in any way impairing otherwise their rights as sureties against him. If defendants had any equitable claim that this 20 acres should be continued subject to the mortgage for the protection of their own interest, they should have given notice of such claim, in order to raise any ground of complaint against the sureties that the making of the release was prejudicial to the defendants. The full value of the 88 acres was allowed against complainants, in reduction of the amount of the decree.

As to the rents and profits for the four years Mooneyham previously had possession of the land, he testifies that the rental value was about $60 per year, with taxes and repairs to come out of it; that at the time he conveyed to his co-sureties he had never paid them anything, and then settled with them; that there was then $35 or $40 in his hands due them, after deducting taxes, and for repairs, and foreclosing the mortgage, and they allowed him that for his trouble. There was no evidence to show that this was not a proper accounting and settlement.

We do not find that there is any just ground of complaint with the defendants in respect to this mortgage taken by the sureties. Obviously, the taking of it was no waiver of any right of subrogation.

It appears in the case, that in October, 1868, some $5000 of the revenue collected was stolen from Hoge, and on March 31, 1869, (Session Laws 1869, p. 336,) the legislature passed an act extending the time to Hoge to pay the State revenue until January 1, 1871, on condition his sureties should sign and file with the Auditor a stipulation agreeing to such extension, and that it should not work a release or affect their liability as sureties; which stipulation was accordingly signed by them, and filed with the Auditor, April 16, 1869. This, it is contended, destroyed the right of subrogation in this case.

When this collector's bond was made, the law required Hoge to pay over all the revenue by June 30, 1868. It is said the State, by this extension of time to Hoge, released and discharged all his sureties who did not agree to the extension; (*Davis* v. *People,* 1 Gilm. 409; *People* v. *McHatton,* 2 Gilm. 638;) that the lands in question, if subject to this lien, being then in the hands of innocent purchasers for full value, occupied the position of securities for Hoge, and therefore the extension of time to him, without the consent of the owners of the lands, discharged the lands from such lien; and authorities are cited to the effect that where property is subject to answer for the debt of another person, it stands in the position of a surety, and any dealing with the principal debtor which would have discharged a surety for the debt, will discharge the property held as security for such debt. *Rowan* v. *Sharp's Rifle Mfg. Co.* 33 Conn. 1; *Barnes* v. *Mott,* 64 N. Y. 397.

Assuming the correctness of this doctrine, and its applicability to the facts of the present case, the same answer of want of notice may be made as was with regard to the release of a portion of the property mortgaged to the sureties, and the same remarks upon that subject may be repeated here. The legislature in extending the time of payment, knew only the principal and sureties in the

bond as concerned therein, and dealt regardfully of all
interests that it had knowledge might be affected, passing
the act only upon condition of its being assented to by
the collector's sureties. Had it known of the existence of
adverse interest on the part of these defendants, it might
not have granted the extension without their like consent
also; but not having or being chargeable with notice of any
such interest, it could not be expected to act with any view to
the protection thereof, and for not having done so the State
should not be held responsible, and made to lose the remedy
of a lien upon these lands, because of the supposed prejudicial
effect to their owners resulting from the extension of the time
of payment of the State revenue; and the same is to be
said with respect to the sureties, and their consent to the
extension. We regard the case in this respect as covered by
the principle of the decision in *Matteson* v. *Thomas*, 41 Ill.
110, and *Iglehart* v. *Crane & Wesson*, 42 Ill. 261, that before
a prior mortgagee can be required to shape his action in the
collection of his debt, in reference to the subsequent order of
alienation of different parcels of the mortgaged premises, he
must have actual notice of what that order is, and not merely
the constructive notice derived from the registry of the deeds
made by the mortgagor subsequent to the mortgage,—that
such registry is not constructive notice to him.

As the original bill filed January 8, 1876, did not show that
the sureties had paid anything upon the judgment recovered
in the Supreme Court in favor of the State, and it was the
supplemental bill filed October 31, 1876, which showed the
payment by the sureties of this judgment on July 24, 1876,
being more than six months after the original bill was filed,
it is insisted the complainants were entitled to no relief what-
ever in respect to this judgment; that the hearing of a
chancery cause can be had only on the grounds which existed
when the original bill was filed. We do not conceive that it
was only payment of the judgment by the sureties which

gave them title to relief in respect to it. It has been held that a surety for a debt secured by mortgage may, even before he has been injured, compel payment from the land in the first instance. 1 Hilliard on Mortgages, 338; and see *King* v. *Baldwin*, 2 Johns. Ch. 554; 4 id. 122.

The original bill showed the recovery of the judgment in the Supreme Court in favor of the State, and prayed that enough of the lands to pay that judgment be declared subject thereto, and be sold to pay the same, which form of relief complainants were entitled to without payment of the judgment, agreeably with the last above authorities. The supplemental bill showed the payment by the sureties of the judgment since the commencement of the suit, and prayed that complainants be subrogated to the rights of the State, and that the lands be sold to pay the sureties 'the amount they had paid on the judgment. The relief prayed for by the original and supplemental bills, and which complainants were entitled to under them, was substantially the same, as it accomplished the same end. There is nothing in this point.

It is insisted that the court erred in ordering a sale of the lands in the inverse order of their alienation by Hoge. It is admitted by appellants that this would have been the just and proper mode of sale had Hoge owned all these lands when the bond was made; but as he at that time owned but two of the tracts, and afterwards acquired title to the other tracts, it is insisted that the reason of the rule can have no application to the facts in this case; that when Hoge conveyed the tracts he owned when the bond was made, it could not be said, as to the grantees, that the liability of Hoge on this bond was thereby primarily cast upon the lands to which Hoge at that time had no title, and subsequently acquired. It is claimed that the lien, if any, attached to the subsequently purchased tracts in the same order of time in which Hoge acquired title to them, and that they thus stand in the nature of so many successive mortgages or securities for

Hoge, and therefore the payment of Hoge's debt from them should be enforced in the same order of time in which they severally became subject to such payment,—that the party whose property was last pledged for the default of Hoge should have the benefit of all prior liens and securities which the State and county could have enforced. We perceive no difference for the application of the rule where the lands are all held at the time the lien attaches, and where part or all of them are acquired subsequently. As to the two tracts held here when the bond was made, upon the sale of one of them by Hoge the lien rested primarily upon the tract which he retained, and that should first have been sold for the discharge of the debt. The equity would depend on the purchaser's right to have so much of the land as he had bought, free from incumbrance, and on the duty of the creditor, who had two funds open to him, to take that which would not prejudice the purchaser. After Hoge had sold both these tracts owned by him when the bond was made, and he had purchased the first tract he acquired after the making of the bond, the very same equity as in the other case would now exist with respect to this tract while in Hoge's hands, and it should first be sold under the lien, before having recourse to the two tracts which he had previously sold, and which he owned when the bond was made, and the purchaser of this last tract from Hoge would take it with the same equity resting upon it as when in Hoge's hands. Hoge would convey no better right than he possessed himself. The same may be said with respect to each subsequent parcel of land which Hoge acquired. We think the order of sale prescribed was proper, and in accordance with the well settled rule.

There is a claim of homestead right set up against the lien of this bond, with respect to the tracts of land acquired after the making of the bond, which we think must avail, at least to a certain extent.

It appears from the evidence, that on October 27, 1868, Hoge purchased a house and some two acres of land, and at once moved into the house with his family, and occupied it as a homestead until he exchanged it with one Charles Hook. The property was shown to be worth not exceeding $800. A judgment creates no lien against a homestead where it is of less value than $1000. Hoge had a clear homestead right in this last named property, and it being of less value than $1000, it was not subject to the lien of the bond, and should not have been decreed to be sold. *Green* v. *Marks*, 25 Ill. 221; *Bliss* v. *Clark*, 39 id. 590; *Fishback* v. *Lane*, 36 id. 437; *Hartwell* v. *McDonald*, 69 id. 293.

On December 21, 1868, Hoge and Charles Hook exchanged lands, Hoge conveying by warranty deed this house and two acres, and 28 acres elsewhere, to Hook, for which Hook conveyed to Hoge 120 acres of land, and paid him $1000. Soon after, in January or February, Hoge moved on this 120 acres, and occupied it with his family as a homestead until he exchanged it with one Britton. On February 19, 1869, Hoge and Britton exchanged farms, Hoge conveying by warranty deed this 120 acres which he got from Hook, to Britton, for another 120 acres, which Britton conveyed to Hoge. Hoge then moved on this 120 acres got from Britton, and occupied it with his family as a homestead until he conveyed the same to Cantrell, August 24, 1869.

Although a short space of time did intervene after acquiring the title to these several tracts of land by Hoge, before he entered into the occupancy of them as a homestead, yet as he evidently acquired them for a homestead, and within a reasonable time thereafter did move on them and occupy them as a homestead, we think the premises, respectively, at the time of acquiring title, should be considered as becoming the homestead, so that because of their being such the lien of the bond did not attach thereto. As, however, we do not discover in the record any evidence as to the value, while in

the hands of Hoge, of the two tracts of 120 acres each, severally acquired from Hook and Britton, we can not say whether or not they were wholly exempt from the lien. They would be so in case they did not exceed in value, severally, $1000, but if they exceeded that sum in value then they would be exempt to the extent of $1000, and the excess above that would be subject to the lien.

It is objected to considering the homestead right in this case that it is not set up in the answer, and that so there is no averment in the pleadings to afford a foundation for admitting evidence of a homestead right. The bill avers that the bond was a lien upon the lands. The answers deny that the bond ever was a lien upon the lands. Under the issue formed upon this averment and denial, the evidence of a homestead right was competent. It went to show that the bond never was a lien upon the lands,—that they were exempt from the lien so that it never attached to them, and we think the evidence was admissible in disproof of the lien having ever attached, under the general denial that it ever attached, without the answer having set forth specifically the facts showing why the bond never did become a lien.

As to the three tracts of land acquired by Hoge after the making of the bond, as the first was exchanged for the second, and the second for the third, it is contended that if there be found to be a lien, the right of subrogation should be held to exist only in respect to some one of these three tracts,—that to allow it as to all three would be making the same property virtually answer three times for the debt. It is said subrogation is an equitable principle, and that as all the present holders of these three tracts are innocent purchasers for full value, and have made large and valuable improvements thereon, upon consideration of all the equities of the several parties, complainants should, in equitable right, be subrogated but to one only of these tracts. In respect of this last contention, the views of a majority of the court, in which Mr.

Justice SCOTT and the writer of this opinion do not concur, are as follows:

As regards the second and third of these tracts, there was nothing but a mere exchange of one tract for the other. Hoge exchanged with Britton one tract of 120 acres of land for another tract of 120 acres. The last tract would seem to be but a substitute for the other, and to charge both with the lien would look much like subjecting virtually the same property twice.

In respect of dower when a valid exchange of lands is made, and the title is consummated by entry, the widow of either of the parties to the exchange may, by the common law, exercise the right of election as to which estate she will be endowed of,—whether that given, or that received in exchange by her husband; but she can not have dower in both, although the husband had seizin of both during the coverture. 1 Scribner on Dower, 271. Further on, however, the author says: "The doctrine of the common law with respect to exchanges of real property is not universally adopted in the United States. The rule in a majority of the States is, that this mode of dealing in lands stands upon the same footing as transfers in the usual form. Both parties are regarded as ordinary purchasers, and the right of dower of the wife of each attaches as well upon the parcel conveyed as upon that received in exchange." By our statute the right of dower is limited, upon the exchange of lands, as at common law, and the statute providing that if the election by the widow be not made within one year after the death of the husband, it shall be deemed to have been made to take dower in the lands received in exchange. Rev. Stat. 1874, p. 425, sec. 17.

The question is not how it might be at law were the judgment creditors seeking to enforce their lien under the bond. They have been satisfied their debts, and the inquiry is as to the equitable right of subrogation which the sureties in the bond have. Without, then, saying how it might be at law

in the allowance of this right of subrogation, which is governed by equitable principles, the majority of the court are inclined, in view of all the equitable considerations with respect to others who are to be affected by the exercise of the right, to adopt, by analogy, the rule applied where dower is concerned, and hold that, equitably, complainants should be subrogated as to one, only, of these two tracts,—and that will be the one last acquired from Britton, as that was the last in the order of alienation by Hoge, and so first to be sold under the decree, which precludes an exercise of election by complainants as to which one of the tracts the lien shall attach. The operation, then, will be to deny subrogation in respect to the lot acquired by Hoge from Hook, and not hold it bound by the lien, or subject to be sold.

This principle we do not find it practicable to apply with respect to the first exchange. That was not, as in the second case, the mere exchange of one tract for another, but a house and two acres of land, the homestead of Hoge, and not subject to the lien, together with 28 acres of land, were exchanged with Hook for 120 acres of land and $1000. This was not an exchange proper, in the legal sense. We do not see but that that 28 acres is subject to the lien.

Appellees have filed in the case, in this court, a suggestion of certain minor errors in the decree in ordering the whole of certain parcels to be sold, instead of a specified fractional portion thereof, which amounts to a confession of errors in such respect. In this respect, of course, the decree is adjudged erroneous.

The decree will be reversed, and the cause remanded for further proceedings in conformity with this opinion. It may be open to the parties to take further proof, if desired, as to the value of the 120-acre tract acquired by Hoge from Britton, at the time it was held by Hoge, with reference to the homestead question of its being of more than the value of $1000 or not.                    *Decree reversed.*