## Bank of Commerce v. Lesser Franklin, for use, etc.

1. GARNISHMENT—*Execution Must First Issue and Be Returned Unsatisfied.*—It is necessary to the validity of the subsequent garnishment proceedings, that an authorized execution shall first issue and be returned unsatisfied. Such an execution and its return unsatisfied, form the essential basis for the beginning of garnishment proceedings.

2. SAME—*Nature of the Proceeding.*—Proceedings by garnishment, under our statute, are in their nature supplementary to the judgment against the judgment debtor, and there can be no recovery in them against the garnishee unless the judgment debtor might, himself, maintain an action at law against the garnishee for whatever it is that the judgment creditor seeks to recover.

3. SAME—*When It May Be Maintained.*—Generally speaking, garnishment proceedings may be maintained in all cases where an ordinary suit at law would lie against the latter in favor of the judgment debtor.

4. SAME—*Good Cause for Continuance.*—As there can be no proper final judgment against the garnishee in the absence of a judgment against the principal debtor, it would seem that the pendency of an appeal from the judgment rendered by the justice, upon the deter-

Bank of Commerce v. Franklin.

mination of which such judgment depends, constitutes good cause for a continuance of the garnishee suit from time to time until the appeal shall be decided.

5. EXECUTION—*Not To Be Issued upon Justice's Judgment in Civil Action until after Twenty Days, Except, etc.*—No execution shall be issued upon a justice's judgment in a civil action until after twenty days from the date of the judgment, unless the party applying for the same, his agent, or attorney, shall make oath that he believes that the debt will be lost unless execution be issued forthwith. If such oath be made, then the execution shall be issued immediately and levied.

6. SAME—*Presumptions as to Justice's Oath.*—Where the transcript does not show what the oath was, but simply shows that on oath of plaintiff's attorney the execution was ordered, the court will presume in aid of the transcript that the oath referred to was the oath prescribed by the statute.

7. SAME—*Issued Within Twenty Days Does Not Deprive Parties of Right of Appeal.*—The issuing of an execution which may be sworn out within twenty days from the date of the judgments, shall not deprive either party of the right of appeal.

8. CASE—*Defined.*—Bouvier defines a " case " as being a question before a court of justice. Marshall, C. J., defined it as a subject on which the judicial power is capable of acting, and which has been submitted to it by a party in the forms required by law. Probably a " case," in legal parlance when a question before a court of justice is referred to, is ordinarily spoken of synonymously with a suit.

9. PRACTICE—*Where Appeals from Justices are Dismissed.*—In cases where an appeal from a justice's judgment is dismissed, the warranted practice is to award a *procedendo*, and the *procedendo* writ is a command to the justice to proceed upon the judgment appealed from, as if the appeal had never been taken.

Garnishment.—Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1899. Affirmed. Opinion filed April 4, 1900.

FELSENTHAL, D'ANCONA & FOREMAN, attorneys for appellant.

FRED H. ATWOOD and FRANK B. PEASE, attorneys for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court. The Barrett Manufacturing Company recovered a judgment before a justice of the peace against Lesser Franklin,

and on the same day swore out an execution. Such execution and an alias were, respectively, returned unsatisfied, and thereupon the Barrett Company sued out a garnishee process against the appellant as garnishee of Franklin.

Such proceedings were afterward had in the garnishment suit as resulted in a final judgment against appellant, and this appeal has followed.

The regularity of the justice's judgment against Franklin is not questioned, but it is argued that the justice never acquired jurisdiction in the garnishment proceedings; and the contention is that because, as is said, the justice's transcript does not show that the requisite statutory oath was made as a preliminary to the issuance of the execution before twenty days had expired after the date of the judgment, the justice had no right or jurisdiction to issue such execution.

It was undoubtedly necessary to the validity of the subsequent garnishment proceedings, that an authorized execution should first issue and be returned unsatisfied. Such an execution and its return unsatisfied, form the essential basis for the beginning of garnishment proceedings.

The statute (Sec. 119, Chap. 79, entitled "Justices and Constables," Hurd's Rev. Stat.) provides that no execution shall be issued upon a justice's judgment in a civil action until after twenty days from the date of the judgment, "unless the party applying for the same, his agent, or attorney, shall make oath that he believes that the debt will be lost unless execution be issued forthwith. If such oath be made, then the execution shall be issued immediately and levied."

With reference to the oath that was made, upon which the execution issued, the justice's transcript shows as follows :

"On oath of plaintiff's attorney, execution ordered and issued to Constable Badger," etc.

The argument is that because the transcript does not show what the oath was, but simply shows that "on oath of plaintiff's attorney" the execution was ordered, the Cir-

cuit Court had no right to assume that the oath referred to in the transcript was the oath prescribed by the statute; and it is said, " the court can not be allowed to guess what oath the plaintiff took."

We have lately had occasion, upon careful consideration and reference to authority, to decide some analogous questions. Subim v. Isador, 88 Ill. App. 96.

It here appearing from the justice's transcript that an oath by a competent person was taken upon which the execution issued, and there being a manifest purpose by the justice to follow the law, evidenced by his requiring some oath to be taken, it is to be presumed in aid of the transcript (following the above cited case) that the oath prescribed by the statute to be taken was required by the justice to be made, and was made.

The next question is, what effect, if any, did the appeal by Franklin from the principal judgment against himself, have upon the garnishment proceedings ?

Such appeal was perfected by Franklin, May 18, 1897, to the Superior Court, where it remained pending until July 14, 1897, when it was dismissed, and a *procedendo* awarded and delivered to the justice.

The garnishee writ, returnable May 18, 1897, was issued and served upon appellant May 13, 1897. The appeal by Franklin was, as above shown, taken on the day the garnishee writ was returnable, and the justice thereupon, on that day, and repeatedly thereafter, so long as Franklin's appeal remained undisposed of by the Superior Court, granted an order of continuance of the garnishee proceedings, from week to week, the parties being always present. These several orders of continuance, it is said, served to keep alive the garnishment proceedings, and it is urged, were entirely unauthorized and beyond the power and jurisdiction of the justice to make.

Besides the quoted part of Sec. 119, Chap. 79, *supra*, said section contains a provision that the issuing of an execution which may be sworn out within twenty days from the date of the judgment shall not deprive either party of

the right of appeal.   It is also provided by section 115 of the same chapter:

" When such appeal bond is filed with the justice it shall be approved by him, and he shall suspend all proceedings in the case, and if execution shall have been issued he shall recall the same."

And the argument is that because of such statutory provisions, all power of the justice in the garnishee suit ceased from the moment he approved the appeal bond; and that each and every time he entered said orders of continuance he violated the spirit and letter of the statutes, even though the only effect of such continuances was to keep the garnishment proceedings alive pending the appeal.

Such contention would, if sustained, defeat every garnishment proceeding that might be begun in a justice's court within the time an appeal may be taken from the original judgment, if such an appeal were perfected after the garnishment proceedings had been begun and the writ served.

The question is one of much importance collaterally and needs to be correctly determined.

Proceedings by garnishment, under our statute, are in their nature supplementary to the judgment against the judgment debtor, and there can be no recovery in them against the garnishee unless the judgment debtor might, himself, maintain an action at law against the garnishee for whatever it is the judgment creditor seeks to recover.

The garnishment proceedings when once begun constitute a suit—in a limited sense, perhaps, but nevertheless a suit—the course of which must, as regards the garnishee, be in accordance with the statute concerning garnishment.

" The proceeding is in effect a suit by the judgment debtor for the use of his creditor against the garnishee, and, generally speaking, it may be maintained in all cases where an ordinary suit (at law) would lie against the latter in favor of the judgment debtor."   Bartell v. Bauman, 12 Ill. App. 450.

Section 7 of the garnishment act, and also section 88 of the justice's act, expressly authorize a continuance of the

garnishee suit for good cause. And inasmuch as there can be no proper final judgment against the garnishee in the absence of a judgment against the principal debtor (Merchant v. Howland, 46 Ill. App. 458), it would seem that the pendency of an appeal from the judgment rendered by the justice, upon the determination of which such judgment depends, constitutes good cause for a continuance of the garnishee suit from time to time, until the appeal shall be decided.

That is what was done in this case, and we think it was rightfully done, unless the statute quoted, *supra*, which provides for a suspension of all proceedings in the case upon the perfection of an appeal from the principal judgment, forbids it.

What, therefore, is meant by "proceedings in the case," which the statute says shall be suspended pending the appeal from the principal judgment?

Bouvier (Law Dictionary, Ed. of 1897) defines a "case" as being "a question before a court of justice." Judge B. R. Curtis, in his small volume of lectures on the jurisdiction, etc., of the Federal Courts (p. 11), attributes to Chief Justice Marshall (9 Wheaton, 738) the definition of a "case" as "a subject on which the judicial power is capable of acting, and which has been submitted to it by a party in the forms required by law."

Probably a "case," in legal parlance, when "a question before a court of justice" is referred to, is ordinarily spoken of synonymously with a "suit."

A suit, in the broadest sense of the term, frequently involves separate contestations, although all the matters in controversy may be settled in a single adjudication, or one or more of them may hang or depend upon the other.

There were here, certainly, two separate matters in controversy, one the finality of the judgment that fixed Franklin's liability to the Barrett Company, and the other, whether or not the garnishee owed anything to Franklin. In practical effect there were two cases or suits, although one was begun in and depended upon the other.

The effect of Franklin's appeal was to temporarily supersede or suspend the judgment against himself, but the statute nowhere provides that the appeal shall operate to vacate the judgment, or to put an .end to the garnishee suit.

Indeed, all the analogies of the statute are opposed to such being the effect of the appeal.    In cases where, as here, an appeal from a justice's judgment is dismissed, the warranted practice is to award a *procedendo* (Reed v. Driscoll, 84 Ill. 96), and the *procedendo* writ is a command to the justice to proceed upon the judgment appealed from as if the appeal had never been taken.                                      ;

So, while the effect of the appeal was to suspend all. proceedings upon the particular judgment appealed from, it neither vacated nor extinguished the judgment, nor the garnishment suit that had such judgment for its basis.    The garnishment suit was a purely statutory proceeding, as was the appeal from the justice's judgment, and was as amply authorized by the statute as the appeal was.    And the judgment not being. vacated by the appeal, but only suspended in its operation, the garnishment proceedings did not fall simply because of the appeal.                          ,

The orders of continuance that were made were necessary to keep the garnishee proceedings alive while the appeal was pending, and were therefore made for good cause within the meaning of sections 7 and 88, *supra*, and were not forbidden by the provision of section 115, *supra*, directing a. suspension of "all proceedings in the case," upon the perfecting of an appeal from the original judgment.    With reference only to the question here considered, we regard such ".proceedings in the case " as applying only to the suit against Franklin, and not to the suit against the garnishee. ·Hence, the orders of continuance complained of were not unauthorized but were within the jurisdiction of. the justice to make.            .            .            ·

. The case of Dawson v. Cunning, 50 Ill. App. '286, is in point upon and decisive of the questions here. involved .as to .the effect of an appeal upon the judgment appealed from.    See, also, Curtis v. Root, 28 Ill. 367; Oakes v. Will-

iams, 107, Ill. 154; Shirk v. M. & N. C. Gravel Road Company, 110 Ill. 661; Seymour v. Haynes, 104 Ill. 557; Schafer v. Buck, 76 Ill. App. 464.

The remaining question involves the merits of the case.

There seems to be no dispute that at the time of the service of the garnishee writ upon the appellant, there stood to the credit of Franklin's general deposit account with the appellant bank, a sum of money considerably in excess of the amount of the judgment in favor of the Barrett Company; and it further seems to be undisputed that subsequent to the service of the garnishee summons the appellant bank paid out on the checks of Franklin an amount of money equal to or in excess of said judgment. It also appears to be fairly established by the testimony in behalf of appellant, that at the time of the service of the garnishee writ Franklin was indebted to the bank upon his personal obligation held by the bank in a sum exceeding the moneys standing to the credit of his deposit account. For a part at least of such indebtedness, the bank held collateral security.

And it should be said, that by some private understanding between Franklin and the president of the bank, Franklin's checks against the money standing to his credit upon the bank's books, at the time in question, were to be supervised by the president and paid only for the benefit of a special enterprise in which Franklin was engaged. There was no entry of any such limitation upon Franklin's checks made upon the books of the bank, and no other officer of the bank, so far as appears, knew of any such private understanding between Franklin and the president of the bank. Nor did the bank or any of its officers furnish any part of the money that so stood upon the books of the bank to the credit of Franklin's general deposit account.

All of such money was procured by Franklin from sources entirely outside and independent of the bank.

The president of the bank testified to such private understanding, and that unless it could be seen from the very nature of the checks that they were drawn for the pur-

pose of the enterprise, he was to talk with Franklin and in that way ascertain the purpose for which the checks were drawn. But we nowhere observe in the testimony that all or any of the checks that were paid after the service of the garnishee process, were drawn for or applied to the benefit of the particular enterprise spoken of. It should also be mentioned that the president of the bank testified without contradiction, that when the moneys in question were deposited by Franklin it was done upon the understanding between Franklin and himself that no part of the same should or could be used or applied in payment of any part of Franklin's indebtedness to the bank.

The court gave three instructions to the jury, at the request of appellee. None were offered in behalf of appellant, except the usual peremptory ones to find for the defendant (appellant), that were refused. The given instructions were as follows:

"1.  The court instructs the jury that if they find from the evidence that the plaintiff, Lesser Franklin, had a deposit account with the defendant bank at the time of the service of the garnishee summons upon it in this cause, and that the plaintiff at that time had on deposit with the defendant a sum of money equal to or in excess of the amount shown by the evidence to be due on the judgment in favor of the Barrett Manufacturing Company and against said Lesser Franklin upon which this proceeding is brought, then the jury should find the issues for the plaintiff, and assess the plaintiff's damages at the amount shown by the evidence to be due upon said judgment, unless you believe from the evidence that said moneys were held by the bank as a special deposit for the payment of the debts of a special enterprise in which Franklin was engaged and not for payment to Franklin or his orders generally.

2.  If the jury find from the evidence that the plaintiff, Lesser Franklin, had a deposit account with the defendant bank at the time of the service of the garnishee summons upon it in this cause and that the plaintiff at that time had on deposit with the defendant a sum of money equal to or in excess of the amount shown by the evidence to be due on the judgment in favor of the Barrett Manufacturing Company and against said Lesser Franklin, upon which this proceeding is brought, and if the jury believe further from

the evidence that the defendant bank afterward paid out on the checks of said Lesser Franklin drawn against said deposit account an amount equal to or in excess of the amount shown by the evidence to be due on said judgment, then the court instructs the jury that they should find the issues for the plaintiff and assess the plaintiff's damages at the amount due and owing on said judgment as shown by the evidence therein, unless you further believe from the evidence that said deposits were held by the bank as a special deposit for the payment of liabilities of a special enterprise in which Franklin was engaged and not for payment to Franklin or his orders generally.

3.  You are instructed that although you may believe from the evidence that Lesser Franklin was indebted to the defendant in a large sum of money upon notes and that the amount of such notes largely exceeded the deposit account of said Franklin with the defendant, still if you find from the evidence that on the date of the service of the garnishment writ in this case there was a balance in the deposit account of said Franklin at the defendant bank largely in excess of the original judgment in this case against said Franklin and in favor of the Barrett Manufacturing Company, and if you further find that after the service of the garnishment writ in this case the defendant paid out the amount of moneys standing in such deposit account to the credit of said Franklin upon checks drawn by said Franklin in the usual course of business and that the notes which have been introduced in evidence in this case by the defendant bank were not charged up against said deposit account, then you should find the issues for the plaintiff; unless you further find from the evidence that said deposit was held by the bank as a special deposit for the payment of the liabilities of a special enterprise in which Franklin was interested and not for the payment to Franklin or his orders generally."

We do not find the instructions to be susceptible of any of the criticisms to which appellant's counsel subjects them. They were applicable to the evidence and the issues, and it was for the jury to determine what the facts were.    Appellant's principal criticism of the instructions is that they ignore appellant's claimed right of set-off because of its demands against Franklin.

Passing over the query that arises, as to whether it was not the duty of appellant to offer an instruction upon the

subject of set-off, if it wished its defense by way of set-off to be submitted to the jury (Hutchinson v. Sullivan, No. 8442, filed February 27, 1900), it should not be forgotten that the president of the appellant bank testified explicitly that the terms upon which Franklin deposited the money in controversy, were that no part of the money deposited should be used by the bank to apply upon Franklin's note held by it, and there was no other evidence upon that express subject.

If the bank expressly stipulated away its right to set off the indebtedness due to it by Franklin against his deposit, why should the court incumber the instructions with such question further than was done by the third instruction?

Furthermore, set-off is an affirmative defense and the bank was not obliged to exercise its right, if it had any, to set off its claim. There is no pretense that it did so to the extent of charging up any part of Franklin's indebtedness against his account, or in any manner except to demand payment by Franklin of his unpaid indebtedness. Upon the contrary, it appears affirmatively that it did not assert its claim against any of Franklin's checks presented and paid after service of the garnishee writ. Upon what consistent theory of right could set-off be claimed against appellee if the right to it did not exist against Franklin's general checks? The verdict, by necessary intendment, found that the moneys were not a special deposit for the payment of obligations connected with Franklin's special enterprise, and in such respect the verdict was based upon inferences as potent as evidence, that none of the checks paid by the bank were in fact drawn for such obligations. We have already referred to the fact that while the private arrangement between Franklin and the president of the appellant bank permitted him, the president, to see that checks drawn against the deposit by Franklin were applied to such special enterprise, there is no evidence that any of the checks were so in fact drawn or applied. Whatever inferences upon the subject are susceptible of being drawn

are as fully favorable to the theory that the checks were not so drawn or applied as that they were, and the jury's decision as to the fact should not be disturbed.

This view of the case being decisive, it is not necessary for us to enter upon a consideration of the law regulating the general contract rights between banks and their depositors, or to do more than order the judgment of the Circuit Court to be affirmed, which is accordingly done. Affirmed.