## William A. Snyder v. Edward Powell.

### Gen. No. 13,140.

1. CONSTABLE—*power of, with respect to acceptance of delivery bond.* A constable is not bound by statute to accept a delivery bond where he has levied upon property upon a justice's execution. It is within his discretion to accept or refuse such a bond.

2. APPEAL OR CERTIORARI—*effect of, upon levy.* An appeal or *certiorari* does not operate to vacate the proceedings already had and a levy already made.

3. CONTEMPT—*when constable not guilty of.* A constable is not guilty of contempt in refusing to obey an order of the Circuit Court requiring him to accept a delivery bond to release a levy made upon an execution issued upon a justice's judgment, where such levy preceded the *certiorari* proceedings instituted to review the judgment under which the levy was made. The order being without the Court's jurisdiction was void.

Action commenced before justice of the peace. Error to the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the October term, 1906. Reversed. Opinion filed April 18, 1907.

**Statement by the Court.** This is a writ of error directed to the Circuit Court of Cook county to secure the reversal of an order entered by a judge of that court committing the plaintiff in error, William A. Snyder, to the county jail of Cook county "until," to quote from the order, "he complies with the orders of the court, or until he purges himself of the contempt by him committed against the court, or until otherwise discharged by due process of law; in no event is such imprisonment to exceed six months."

The proceedings out of which this order sprang began before a justice of the peace of Cook county, John R. McDonnell, in whose court a judgment was obtained against one Edward Powell by the People of the State of Illinois

for the use of Christ Munch, for the sum of $200 and $4.65 costs, on July 10, 1906. On this judgment William A. Snyder, the plaintiff in error, who was a constable, received an execution for service, and levied it upon four horses, two sets of double harness and one spring wagon belonging to said Edward Powell.

August 3, 1906, Powell filed in the Circuit Court of Cook county a petition for a *certiorari,* which was granted. The writ issued and was served on McDonnell, the justice, the same day. An appeal bond as required was also filed that day in the Circuit Court, and an order entered reciting that "a forthcoming bond had been presented and approved by the court in favor of Constable W. A. Snyder, etc.," and commanding Snyder *instanter* on delivery to him of the forthcoming bond, "approved by me" (so the order runs), "to turn over to said Edward Powell said horses, harnesses and wagon which he holds by virtue of said execution, a writ of *certiorari* having this day been granted in said cause to the Circuit Court."

On the same day, as appears by the affidavit of James Todd, later filed in the cause, Powell's solicitor called on Snyder and offered him a bond purporting to be approved by Judge Honore of the Circuit Court, and demanded that he turn over to Edward Powell the property he had levied on. Snyder refused, on advice of counsel, to accept said bond or to turn over said property.

Thereupon, on August 4, on motion of Powell's attorney, Snyder was required by the Circuit Court to show cause on August 7, why he should not be attached for contempt of court.

August 7 Snyder entered his special appearance for the purpose of objecting to the jurisdiction of the court, and filed a sworn answer to the rule, in which he set forth that he had, as constable, levied upon certain property of Powell by virtue of legal process from McDonnell as justice, and held it by virtue of such levy; that no writ had been served on him *from the Circuit Court,* and that the court ought not

to have further cognizance of the rule for want of jurisdiction of the subject-matter and person.

August 8 the matter apparently came to hearing, for on that date the affidavit of James Todd, above referred to, was filed, and also an affidavit of Edward Powell that at the time of the levy he had offered to give the constable a bond for any amount that was required if he would leave him his horses, but the constable had demanded $200 in cash.

August 8 another order was entered, which recited that a forthcoming bond in the sum of $500 had been presented and approved by the court in favor of Constable W. A. Snyder, who had levied on certain personal property described, and proceeded, "it is hereby ordered that in addition to the order of August 4 it is further ordered that the said constable W. A. Snyder upon the said Edward Powell in open court tendering a forthcoming bond in the sum of $500, with good real estate security, *to be approved by him* at once, *or* upon the delivery to him of the forthcoming bond *approved by the court,* do *instanter* turn over and deliver to the said Edward Powell" the said property.

On August 10, 1906, the order to secure the reversal of which this writ of error is prosecuted, was entered. Preceding the ordering words, quoted at the beginning of this statement, there are recitals in said order that Snyder appeared in open court by person and by counsel, that the court interrogated him and ruled him to show cause why he should not be committed for contempt, etc., and the respondent answered that he had no other cause to show than that which his attorneys had already presented, and also findings that the causes shown by said attorneys were insufficient, and that the respondent had refused to accept the forthcoming bond approved by Judge Honore, and that he had been tendered a good forthcoming bond by Edward Powell, and had refused to accept and approve any forthcoming bond by Edward Powell, and was guilty of contempt in standing in defiance of the order of the court.

A writ of error that was sued out of this court was made a *supersedeas,* and the plaintiff in error was released on bail.

It is alleged by the assignments of error that the orders above described of August 3d, 4th, 8th and 10th, were erroneous.

R. G. LEWIS and LOUIS GREENBERG, for plaintiff in error; C. STUART BEATTIE, of counsel.

JAMES TODD, for defendant in error.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

The basis for the commitment for contempt involved in this cause was the order of August 8, 1906, made in amendment of and as a substitute apparently for the previous order of August 3, 1906. It is to disobedience, or, as it is expressed, "defiance" of one or both of these orders to which the court refers in its somewhat indefinite order of commitment on August 10. But presumably it is the order of August 8 which is actually relied on, for that order contains a less drastic direction to the constable, Snyder, than the one of August 3. The order of August 3 required the constable to accept a particular forthcoming bond approved by the court, and deliver thereon the goods he had seized. The order of August 8 recognized, apparently, the doubtful legality of such a requirement, and provided an alternative. The constable was required to accept the bond which Judge Honore had approved, or some other bond which Edward Powell might tender him in open court in the sum of $500, with good real estate security, *to be approved by him,* the constable.

We do not think the court had the right to make either of these orders.

The only statutes which provide or attempt to regulate delivery bonds on which property taken on execution by a constable on a judgment before a justice shall be released, are section 9 of article 11, and section 6 of article 13 of the Justice Act of 1895.

Section 6 of article 13 relates entirely to the sole subject

of that article—"Trials of Right of Property," and is only applicable to cases where a claimant under that article has set up a right to property taken on execution or attachment against another person, and it may therefore be dismissed from consideration, except to note that this provision does explicitly provide for the taking of a delivery or "forthcoming" bond in cases of appeal from the judgment in the trial of the property right, and provides also for the constable's duty in case no such bond is given.    This is significant in its bearing on the fact that except in cases of this nature there is no provision at all as to the duty of the constable in cases of appeal or *certiorari*, further than the general provision that he is to "stay all further proceedings" in the case, found in section 3 of article 10 of the Act.

Section 9 of article 11 is as follows: "Any constable shall be authorized to remove property levied on by him when it shall be necessary for the safe keeping of the same. If the defendant shall desire to retain the property so levied on until the day of sale, it shall be lawful for the said constable to allow the defendant to so keep the same, if said defendant, or his agent, shall give bond to said constable in double the amount of the execution, with good security, conditioned for the delivery of said property to the same constable, at the time and place of sale to be named in such bond.    And if the said property shall not be delivered as aforesaid at the time and place of sale, the constable having the execution may proceed to levy the same upon the same or any other property of the defendant, or upon the property of the security in such bond, and shall sell the same, giving two days' notice of such sale by advertisement, to be posted at one public place."

It seems clear to us, from consideration of the language of section 3 of article 10, and section 9 of article 11, together, that the statutory duty and rights of the constable in regard to the goods he has levied upon cannot be changed by the action of the court to which an appeal is taken or from which a *certiorari* is obtained after the levy is made.

It is not necessary to decide whether or not the statute

does not prohibit a constable, after the *supersedeas* is issued, from taking a delivery bond; it certainly does not compel him to take one either before or after appeal. If he chooses to do so before appeal, it is "lawful" for him to do so and to give up the property. Perhaps it would be lawful afterwards, at his discretion and on his being satisfied as to the bond. But where does the Circuit Court derive its authority to interfere with his discretion, to approve bonds for him, or to order him to take them?

We think the court's action wholly without jurisdiction. Snyder was no party to the *certiorari* proceedings further than the statute (section 3, article 10) imposed upon him a duty "to stay proceedings" when served with proper notice of the *certiorari*.

But that an appeal or *certiorari* does not operate to vacate proceedings already had and a levy already made, is plain from the statute, and has been often decided. Seymour v. Haines, 104 Ill., 561; Dawson v. Cunning, 50 Ill. App., 286; Schafer v. Buck, 76 Ill. App., 464; Bank of Commerce v. Franklin, 88 Ill. App., 198.

If the court's orders of August 3 and August 8 were without jurisdiction, there was no contempt in disobeying them. It is not a case where the order disobeyed is erroneous, but made within the court's jurisdiction. In this case the constable was as independent of the judge, as was the judge of the constable. The order of commitment of August 10, 1906, made by the Circuit Court must be reversed and it is so ordered.

*Reversed.*